JOSEPH H. HUNT
   Assistant Attorney General
ERIC WOMACK
   Assistant Branch Director
INDRANEEL SUR
   indraneel.sur@usdoj.gov
   D.C. Bar No. 978017
   Trial Attorney
   Civil Division, Federal Programs Branch
   1100 L Street, NW
   Washington, D.C. 20530
   Telephone: (202) 616-8488
   Facsimile: (202) 616-8470

Counsel for the United States of America

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| DIVINO GROUP LLC, a California limited liability company, CHRIS KNIGHT, an individual, CELSO DULAY, an individual, CAMERON STIEHL, an individual, BRIAANDCHRISSY LLC, a Georgia limited liability company, BRIA KAM, an individual, CHRISSY CHAMBERS, an individual, CHASE ROSS, an individual, BRETT SOMERS, an individual, and LINDSAY AMER, an individual, STEPHANIE FROSCH, an individual, SAL CINEQUEMANI, an individual, TAMARA JOHNSON, an individual, and GREG SCARNICI, an individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC, a Delaware limited liability company, YOUTUBE, LLC, a Delaware limited liability company, and DOES 1-25,<br><br>    Defendants. | Case No. 5:19-cv-004749-VKD<br><br>**MEMORANDUM OF LAW FOR INTERVENOR UNITED STATES IN SUPPORT OF THE CONSTITUTIONALITY OF 47 U.S.C. § 230(C)**<br><br><br>Action Filed: August 13, 2019<br>Trial Date: None Set<br>Rule 5.1 Notice Filed: December 20, 2019 |

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C)
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

## **TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

STATEMENT .......................................................................................................................2

    I.  Statutory Background .............................................................................................2

    II. Proceedings In Plaintiffs' Case..............................................................................4

ARGUMENT ........................................................................................................................7

    I.  The Court Should First Decide The Potentially Dispositive Statutory
       Issues Because They May Obviate The Need To Address Plaintiffs'
       Constitutional Challenge .........................................................................................7

    II. If The Court Reaches the Question, It Should Conclude That
       Section 230(c) Is Constitutional..............................................................................8

CONCLUSION....................................................................................................................12

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. **§** 230(C) - i -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Free Speech Coalition*,
  535 U.S. 234 (2002) ............................................................................................................. 8

*Ashwander v. TVA*,
  297 U.S. 288 (1936) ............................................................................................................. 7

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ............................................................................................ 4

*Borough of Duryea v. Guarnieri*,
  564 U.S. 379 (2011) ..................................................................................................... 10, 11

*Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*,
  473 U.S. 788 (1985) ............................................................................................................. 9

*Delfino v. Agilent Techs., Inc.*,
  145 Cal. App. 4th 790, 52 Cal. Rptr. 3d 376 (Cal. Ct. App. 2006) .............................. 4

*Dep't of Commerce v. U.S. House of Representatives*,
  525 U.S. 316 (1999) ............................................................................................................. 7

*Doe v. Internet Brands, Inc.*,
  824 F.3d 846 (9th Cir. 2016) ............................................................................................ 4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) .................................................................................. 2, 3, 4

*Fields v. Legacy Health Sys.*,
  413 F.3d 943 (9th Cir. 2005) ........................................................................................... 11

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) ......................................................................................... 11

*Logan v. Zimmerman Brush Co.*,
  455 U.S. 422 (1982) ........................................................................................................... 11

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019) ........................................................................................................ 9

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - ii -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

*N.Y.C. Transit Auth. v. Beazer*,
 440 U.S. 568 (1979) .............................................................................................................. 8

*Orin v. Barclay*,
 272 F.3d 1207 (9th Cir. 2001) ............................................................................................ 12

*Prager University v. Google LLC*,
 951 F.3d 991 (9th Cir. 2020) ........................................................................................*passim*

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
 697 F. App'x 526 (9th Cir. 2017) ......................................................................................... 2

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
 144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................................................ 2

*Spector Motor Serv. v. McLaughlin*,
 323 U.S. 101 (1944) .............................................................................................................. 7

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
 No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) .......................................... 3

*Sure-Tan, Inc. v. NLRB*,
 467 U.S. 883 (1984) ............................................................................................................ 10

*Zango, Inc. v. Kaspersky Lab, Inc.*,
 568 F.3d 1169 (9th Cir. 2009) .............................................................................................. 3

*Zeran v. Am. Online, Inc.*,
 129 F.3d 327 (4th Cir. 1997) ................................................................................................ 4

**STATUTES**

15 U.S.C. § 1125 *et seq.* ..............................................................................................................6, 7

28 U.S.C. § 2403 ............................................................................................................................. 6

42 U.S.C. § 1983 ............................................................................................................................. 6

47 U.S.C. § 230 ......................................................................................................................*passim*

Communications Decency Act of 1996 ("CDA"),
 Pub. L. No. 104-104, 110 Stat 56 (codified at 47 U.S.C. § 230) .......................................... 1

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - iii -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

**RULES**

Fed. R. Civ. P. 5.1 ................................................................................................................ 6

Fed. R. Civ. P. 12 ........................................................................................................*passim*

**OTHER AUTHORITIES**

F. Mott, *American Journalism* 55 (3d ed. 1962) ................................................................ 9

H.R. Rep. No. 104-458 (1996) (Conf. Rep.), *as reprinted in* 1996 U.S.C.C.A.N. 10 .................. 3

John E. Nowak, Ronald D. Rotunda & J. Nelson Young,
  *Handbook on Constitutional Law* (1978) ..................................................................... 12

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - iv -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

## INTRODUCTION

Plaintiffs, who are video creators seeking monetary and other recovery based on the alleged editorial decisions of a popular Internet platform, YouTube, have raised a constitutional challenge to Section 230(c) of the Communications Decency Act of 1996 ("CDA") (Pub. L. No. 104-104, § 509, codified at 47 U.S.C. § 230(c)). When the World Wide Web was in its early days in 1996, Congress sought through Section 230(c) to promote and protect "Good Samaritan" blocking and screening of offensive material by limiting the liability of website owners and operators. The statute immunizes for certain liability purposes an "interactive computer service" provider from being treated as the publisher or speaker of content created by third parties and hosted by the service (47 U.S.C. § 230(c)(1)), or for removing or restricting access to certain types of offensive material (§ 230(c)(2)).

In seeking Rule 12(b)(6) dismissal of the operative complaint, YouTube has invoked the statute as an affirmative defense to Plaintiffs' claims, and Plaintiffs have responded by arguing, among other things, that the statute violates the First Amendment and the equal protection guarantee of the Fifth Amendment to the extent it shields YouTube from liability for Plaintiffs' claims. Plaintiffs also seek a declaratory judgement to that effect.

The United States intervenes today in response to Plaintiffs' constitutional challenge, and, in defense of the statute, respectfully limits this brief to two arguments.

*First*, under the doctrine of constitutional avoidance, this Court should start by deciding the statutory arguments presented by the parties regarding the pending Rule 12(b)(6) motion, because those non-constitutional grounds may obviate the need for decision on any constitutional question. A court should decide a constitutional question only when necessary, which would not be the situation here if the Court were to conclude that statutory grounds suffice to dispose of the case.

*Second*, if the Court concludes that it must reach the constitutional question, Plaintiffs' challenge should be rejected on the merits. Section 230(c) does not regulate Plaintiffs' primary conduct. Instead, the statute establishes a rule prohibiting liability for certain conduct by online platforms, including YouTube. Because the United States is intervening

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 1 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202) 616-8488

for the limited purpose of defending the constitutionality of Section 230(c), it does not take a position on whether the statute forecloses the particular claims Plaintiffs have alleged. But assuming it does, that would not violate the First Amendment's Speech Clause, because—as the Ninth Circuit squarely held in *Prager University v. Google LLC*, 951 F.3d 991 (9th Cir. 2020)—YouTube is not a state actor capable of denying the freedom of speech. In other words, Section 230(c) would not deny Plaintiffs any constitutional claim they otherwise would have. Nor do Plaintiffs' arguments find support in the First Amendment's Petition Clause or in the constitutional guarantee of equal protection. In short, however Plaintiffs' challenge to Section 230(c) is framed, it is meritless, and should be rejected.

## STATEMENT

### I. Statutory Background

Section 230(c) of the CDA is entitled "Protection for 'Good Samaritan' blocking and screening of offensive material." The Ninth Circuit has described the statute as "immuniz[ing] providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163-64 (9th Cir. 2008) (*en banc*) (footnotes omitted).

In particular, Paragraph (1) states: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute also provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). The result is to protect online platforms from such liabilities as those the common law imposed on publishers or speakers for libel or slander. Some courts have also construed the limitation to shield online platforms against certain liabilities under federal law. *See, e.g.*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015), *aff'd sub nom. Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017). The immunity applies only when the interactive computer service provider is not also the "information content provider" of the material in question—

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. **§** 230(C) - 2 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202) 616-8488

*i.e.,* the person "responsible, in whole or in part, for the creation or development of" the "offending content." *See Roommates*, 521 F.3d at 1162-63 (quoting § 230(f)(3)).

For its part, Paragraph (2) describes a separate immunity. It states:

No provider or user of an interactive computer service shall be held liable on account of —

    (A)    any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

    (B)    any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph [A].

47 U.S.C. § 230(c)(2).*

The problem Congress sought to solve in Section 230(c) arose from a New York state trial court's ruling that an internet service provider that had voluntarily deleted some messages from an online message board was then "legally responsible for the content of defamatory messages that it failed to delete." *See Roommates*, 521 F.3d at 1163 (discussing *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995)). The statute responded by "immuniz[ing] the *removal* of user-generated content, not the *creation* of content." *Id.* That is, Section 230 "provides 'Good Samaritan' protections from civil liability for providers . . . of an interactive computer service for actions to restrict . . . access to objectionable online material. One of the specific purposes of this section is to overrule *Stratton* . . . which . . . treated such providers . . . as publishers or speakers of content that is not their own because they have restricted access to objectionable material." H.R. Rep. No. 104-458 (1996) (Conf. Rep.), *as reprinted in* 1996 U.S.C.C.A.N. 10.

---

* The text of Paragraph (2)(B) refers to "the material described in paragraph (1)," but the Ninth Circuit "take[s] it that the reference to the 'material described in paragraph (1)' is a typographical error, and that instead the reference should be to . . . § 230(c)(2)(A)," because "Paragraph (1) pertains to the treatment of a publisher or speaker and has nothing to do with 'material,' whereas subparagraph (A) pertains to and describes material." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1173 n.5 (9th Cir. 2009).

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 3 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202) 616-8488

According to the Ninth Circuit, Section 230(c)(1) shields the defendant from a claim wherever "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). In that context, the Ninth Circuit views "publication" as "involv[ing] reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.*. The Ninth Circuit has remarked in an *en banc* opinion that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune" under Section 230(c)(1). *Roommates*, 521 F.3d at 1170-71.

The Ninth Circuit has described one of the policies behind the liability shield as promotion of speech—that is, to "avoid the chilling effect upon Internet free speech that would be occasioned by the imposition of tort liability upon companies that do not create potentially harmful messages but are simply intermediaries for their delivery." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016) (quoting *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 52 Cal. Rptr. 3d 376, 387 (Cal. Ct. App. 2006)). In enacting Section 230(c), Congress made findings describing online platforms as offering "a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." § 230(a)(3). Accordingly, "the policy of the United States" is "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, *unfettered by Federal or State regulation*." § 230(b)(2) (emphasis added). To be sure, Congress also determined that it was the policy of the United States "to ensure vigorous enforcement of *Federal criminal laws* to deter and punish trafficking in obscenity, stalking, and harassment by means of computer." § 230(b)(5) (emphasis added). But in balancing the various interests, Congress sought "not to deter harmful online speech through the separate route of imposing *tort liability* on companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997) (Wilkinson, C.J.) (emphasis added).

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 4 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

## II. Proceedings In Plaintiffs' Case

The instant Plaintiffs are "Lesbian, Gay, Bisexual, Transgender, Transsexual or Queer internet content creators" who make videos, including many that "discuss issues which affect members of the LGBTQ+ community." 2d Am. Compl. ¶¶ 1, 41 (Doc. 20) ("SAC"). YouTube, owned by Google, is allegedly the dominant Internet video platform, hosting "roughly 95%" of global "public video-based content," and "monetizing the free speech and expression of . . . the 2.3 billion people who now use" it. SAC ¶ 15. Plaintiffs allegedly contracted with YouTube, licensing it to distribute their videos while agreeing that YouTube retained various rights—including the right to enforce its community guidelines, and the right to determine "in its sole discretion" whether the videos contained "material . . . in violation of" the agreement. Rule 12(b)(6) Opp. 4 (Doc. 28); *see* SAC ¶¶ 10, 117(d), 288. According to Plaintiffs, YouTube "monetize[s]" the videos by selling advertisements for display along with them, and some Plaintiffs have paid YouTube to promote their videos (individually or grouped into channels) to potential viewers. SAC ¶¶ 55, 89, 131. YouTube allegedly retains "unfettered and absolute discretion to restrict the viewership, reach, and monetization of [the] videos." SAC ¶ 118.

One way that YouTube allegedly exercises that discretion is through its "Restricted Mode," which works "much like a curtain" to "block[] access" by "younger, sensitive audiences to video content that contains certain specifically enumerated 'mature' aspects." SAC ¶ 77. When a viewer turns on "Restricted Mode" for a personal account (or when it is activated by a parent or system administrator, such as one acting on behalf of a public library, school, or other work place) and lands on a video placed in "Restricted Mode," instead of showing the video, YouTube displays a warning, stating that the video is unavailable and that to view the video the viewer would "need to disable Restricted Mode." SAC ¶¶ 77-79, 83, 343. YouTube allegedly tells viewers who inquire that videos are placed in "Restricted Mode" when they include, among other things, "[o]verly detailed conversations about or depictions of sex or sexual activity," "inappropriate language, including profanity," or other sensitive

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 5 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

content. SAC ¶¶ 26, 85, 344, 345, 346. "On average, 1.5–2% of users view YouTube through Restricted Mode." *Prager Univ.*, 951 F.3d at 996.

YouTube has allegedly styled itself (including in testimony to Congress) as a "neutral public forum." SAC ¶¶ 61, 287, 342. But Plaintiffs allege that YouTube has used its "power over filtering" as a "censorship power to silence and crush Plaintiffs because they identify [as] LGBTQ+ and express LGBTQ+ viewpoints." SAC ¶ 21. In particular, Plaintiffs allege that YouTube placed some of their videos into "Restricted Mode," or rendered certain videos ineligible for generation of advertising revenue by "demonetizing" them, justified by YouTube's alleged false statements that the videos contained "inappropriate" or "otherwise objectionable" content. SAC ¶¶ 3, 26, 151, 345-47. According to Plaintiffs, the episodes of "Restricted Mode" and demonetization misuse they allege are not isolated; rather, YouTube purportedly has a "'company policy' of not selling ads to 'gay' content creators because the 'gay thing' render[s] [their] video[s] 'shocking' and sexually explicit regardless of the actual content of the video[s]." SAC ¶ 20; *see* SAC ¶¶ 122, 134, 146; SAC Ex. A (transcript of communication with Google Support staff in Bangalore, India allegedly describing policy).

Plaintiffs seek a declaration that 47 U.S.C. § 230(c) violates the First and Fourteenth Amendments; they allege that applying the statute as a bar on their claims would be "both an unconstitutional restraint on Plaintiffs' First Amendment rights to freedom of petition and speech, and a violation of equal protection of law under the Fourteenth Amendment." SAC ¶ 261; *see* SAC ¶¶ 280-82. Plaintiffs also assert various claims against YouTube, including two federal statutory claims—one alleging that YouTube engaged in unconstitutional "[v]iewpoint-[b]ased [d]iscrimination" remediable under 42 U.S.C. § 1983 (SAC ¶¶ 283-303), and the other alleging that YouTube engaged in false advertising and false association in violation of the Lanham Act, 15 U.S.C. § 1125 *et seq.* (SAC ¶¶ 337-48).

This Court has not yet certified any constitutional question under 28 U.S.C. § 2403 and Rule 5.1. On March 9, 2020, this Court endorsed a stipulation providing the United States until April 24, 2020 to determine whether to intervene and to file a brief, if any. Doc.

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. **§** 230(C) - 6 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202) 616-8488

32. On the Government's motion, the Court later enlarged the time for the United States to intervene to May 8, 2020. Doc. 44.

## ARGUMENT

### I. The Court Should First Decide The Potentially Dispositive Statutory Issues Because They May Obviate The Need To Address Plaintiffs' Constitutional Challenge

As an initial matter, this Court should not address the constitutionality of Section 230(c) unless it first determines that the pending motion to dismiss cannot be resolved on non-constitutional grounds. "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 343 (1999) (quoting *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944)); *see id.*, 525 U.S. at 344 ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter") (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

This Court should adhere to that doctrine of constitutional avoidance here and decline to rule on the constitutionality of Section 230(c) unless the motion to dismiss cannot be resolved on other grounds. The United States has intervened solely for the purpose of defending the constitutionality of Section 230(c) and therefore takes no position on the merits of the non-constitutional issues. It is apparent, however, that the Court's resolution of those issues might obviate the need to consider Section 230(c)'s constitutionality.

Here is one example: Plaintiffs assert a Section 1983 claim (SAC ¶¶ 283-303), and Lanham Act claims for false advertising and false association (SAC ¶¶ 337-48). This Court might decide that Plaintiffs have not alleged the elements of either of those federal statutory claims in light of the Ninth Circuit's twin conclusions in *Prager University* that (1) YouTube is not a state actor constrained by the First Amendment (951 F.3d at 999), and (2) "YouTube's statements concerning its content moderation policies do not constitute 'commercial advertising or promotion'" within the meaning of the Lanham Act (*id.* at 999-1000 (quoting

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 7 -
Case No. 5:19-cv-004749-VKD

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202) 616-8488

15 U.S.C. § 1125(a)(1)(B))). And this Court might similarly decide that Plaintiffs have not alleged the elements of their state law claims.

Here is another example: Plaintiffs contend that Section 230(c) does not apply to the misconduct alleged. Rule 12(b)(6) Opp. 13-21. If the Court were to conclude that YouTube's acts as alleged by Plaintiffs do not fit within the terms of either paragraph 230(c)(1) or (2), then the statute would not apply, and there would be no occasion for passing on the constitutionality of the statute.

In short, where "dispositive" statutory grounds may be available, it is "incumbent on" this Court to examine and decide the case on those grounds first. *Cf. N.Y.C. Transit Auth. v. Beazer*, 440 U.S. 568, 582 (1979) ("Before deciding the constitutional question, it was incumbent on [lower courts] to consider whether the statutory grounds might be dispositive.").

## II. If The Court Reaches the Question, It Should Conclude That Section 230(c) Is Constitutional

If the Court were to reach the constitutional question, it should conclude that Plaintiffs' challenge fails on the merits. Section 230(c) does not regulate or limit Plaintiffs' primary conduct, such as their expressive activities. For example, Plaintiffs do not allege that Section 230(c) prevents them from creating videos or posting them on the Internet. *Cf. Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (restriction on virtual child pornography challenged by creators of erotic and nudist works). Instead, Section 230(c) establishes a substantive limitation on the liability of certain Internet companies for claims arising from certain specified conduct. But Plaintiffs cannot show that Congress violated Plaintiffs' constitutional rights by making that affirmative defense available here to YouTube, because none of the clauses of the Constitution on which Plaintiffs rely confers on Plaintiffs any right to bring an underlying claim.

*First*, Plaintiffs do not identify any valid underlying First Amendment speech claim they could have brought against YouTube had Section 230(c) not been in force. To the contrary, the Ninth Circuit explicitly held in *Prager University* that "YouTube is a private

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 8 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

entity" that is not a state actor subject to the constraints of the First Amendment. *See* 951 F.3d at 996, 999. The Ninth Circuit observed that "courts have uniformly concluded that digital internet platforms that open their property to user-generated content do not become state actors," and held that "the state action doctrine precludes constitutional scrutiny of YouTube's content moderation pursuant to its Terms of Service and Community Guidelines." *See id.* at 997, 999. The Ninth Circuit thus concluded that "YouTube may be a paradigmatic public square on the Internet, but it is 'not transformed' into a state actor solely by 'provid[ing] a forum for speech.'" *Id.* at 997 (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930, 1934 (2019)).

The Ninth Circuit relied on the "Supreme Court's state action precedent," including "its recent teaching in *Halleck*." *Id.* In that 2019 decision, the Supreme Court explained: "[W]hen a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor. The private entity may thus exercise editorial discretion over the speech and speakers in the forum." *Halleck*, 139 S. Ct. at 1930. As one illustration, the Court commented: "Benjamin Franklin did not have to operate his newspaper as 'a stagecoach, with seats for everyone.'" *Halleck*, 139 S. Ct. at 1931 (quoting F. Mott, *American Journalism* 55 (3d ed. 1962)). And the Supreme Court made clear that an "imprecise and overbroad phrase" in "passing dicta" in one of its prior decisions "should not be read to suggest that private property owners or private lessees are subject to First Amendment constraints whenever they dedicate their private property to public use or otherwise open their property for speech." *See id.* at 1931 n.3 (discussing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985)). No exception to that principle about private property owners applies to YouTube, as the Ninth Circuit reasoned. *See Prager Univ.*, 951 F.3d at 997-99.

Because YouTube is not a state actor, its alleged misconduct toward Plaintiffs does not implicate Plaintiffs' freedom of speech. And because YouTube's actions do not implicate the First Amendment, the liability protection Section 230(c) affords to YouTube likewise

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 9 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202) 616-8488

does not implicate the First Amendment. Or, put another way, Section 230(c) has not deprived Plaintiffs of any valid underlying Speech Clause claim.

*Second*, although Plaintiffs' Petition Clause argument lacks detailed explanation, they appear to contend that the Petition Clause requires Congress to allow them to proceed with their federal and state law claims even though the challenged statute provides an affirmative defense potentially foreclosing those claims. *See* SAC ¶ 281 (alleging that unconstitutionality stems from "Google/YouTube's use of Section 230(c) as a shield to prevent Plaintiffs from *petitioning the courts for relief* to redress violations of their civil, consumer, and contractual rights, including rights which expressly protect Plaintiffs as a class from identity or viewpoint based discrimination and speech restrictions") (emphasis added); *see also* Rule 12(b)(6) Opp. 20-21 (contending that "the [Communications Decency Act] cannot be construed to preclude Plaintiffs from *petitioning the Courts* to redress discriminatory and unlawful restrictions their rights to free speech and equal benefits and protection of the law") (emphasis added). That assertion mistakenly posits that the Petition Clause requires the Government to guarantee Plaintiffs the ability to continue to litigate the particular claims for relief they have alleged and to reach a particular outcome (here, denial of the Rule 12(b)(6) motion). Tellingly, Plaintiffs have cited no precedents construing the Petition Clause as guaranteeing such an outcome in litigation.

To be sure, the Supreme Court has observed that its "precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes. '[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97 (1984)). "A petition," the Supreme Court has further explained, "conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." *Guarnieri*, 564 U.S. at 388-89 (citing *Sure-Tan*, 467 at 896-97).

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 10 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L Street, NW**
**Washington, DC 20530**
**Tel: (202) 616-8488**

But the requirements of the Petition Clause have already been fully satisfied in this case, given that, by commencing this action, Plaintiffs "convey[ed] [their] special concerns . . . to the government and . . . request[ed] action by the government to address those concerns." *See Guarnieri*, 564 U.S. at 388-89. And Plaintiffs remain free to urge Congress to amend the statute. The Petition Clause, however, does not mandate the substantive response to their petition that Plaintiffs desire—*i.e.*, a decision disregarding the affirmative defense set forth in Section 230(c).

Were it otherwise, every statute or precedent limiting or preempting previously-available legal remedies would violate the Petition Clause. To the contrary: As the Supreme Court explained in interpreting the Due Process Clause of the Fourteenth Amendment, a State (and, accordingly, the Federal Government) "remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether . . . ." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982).

Plaintiffs' Petition Clause argument resembles the Due Process Clause argument the Ninth Circuit rejected in *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009). The plaintiffs there challenged a federal statute limiting the liability of firearms manufacturers in certain circumstances. In upholding the law, the Ninth Circuit concluded that Congress's "legislative determination" creating the liability protection "provides all the process that is due." *Id.* at 1141-42 (internal quotation marks omitted). The court also rejected the contention that the statutory liability limitation deprived the plaintiffs of a property right, reasoning that "a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." *See id.* at 1140-41 (quoting *Fields v. Legacy Health Sys.*, 413 F.3d 943, 956 (9th Cir. 2005)).

Although Plaintiffs have not explicitly invoked the Due Process Clause as a basis for their challenge here, they advance an interpretation of the Petition Clause that would effectively circumvent *Logan* and *Ileto*. At least where, as here, Plaintiffs did not obtain a "final unreviewable judgment" in their favor before Section 230(c) came into force, they have no entitlement to the particular legal theories they have alleged. *See Ileto*, 565 F.3d at 1140-

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 11 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202) 616-8488

41. Congress therefore retained authority to impose limitations on those theories by enacting Section 230(c). *Logan* and *Ileto* thus provide additional confirmation that Plaintiffs' Petition Clause theory lacks merit.

*Third*, Plaintiffs' equal protection challenge fails for the same reasons as their First Amendment Speech and Petition claims, and does not require separate analysis under Ninth Circuit precedent. "It is generally unnecessary to analyze laws which burden the exercise of First Amendment rights by a class of persons under the equal protection guarantee, because the substantive guarantees of the Amendment serve as the strongest protection against the limitation of these rights." *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001) (quoting John E. Nowak, Ronald D. Rotunda & J. Nelson Young, *Handbook on Constitutional Law* (1978)). On that basis, the Ninth Circuit treated an "equal protection claim as subsumed by, and co-extensive with, [the Section 1983 plaintiff's] First Amendment claim." *Id.* This Court need go no further in rejecting Plaintiffs' equal protection theory.

## **CONCLUSION**

For the foregoing reasons, the Court should decide Defendants' Rule 12(b)(6) motion without reaching any constitutional question if possible. If the Court reaches Plaintiffs' challenge to the constitutionality of 47 U.S.C. § 230(c), it should reject it.

DATED: May 8, 2020

Respectfully submitted,
JOSEPH H. HUNT
Assistant Attorney General

ERIC WOMACK
Assistant Branch Director

INDRANEEL SUR
Trial Attorney

By: */s/ Indraneel Sur*
    INDRANEEL SUR

U.S. Department of Justice
Counsel for the United States of America

UNITED STATES'S MEMORANDUM OF LAW IN SUPPORT OF
CONSTITUTIONALITY OF 47 U.S.C. § 230(C) - 12 -
Case No. 5:19-cv-004749-VKD

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202) 616-8488