| | |
|---|---|
| DAVID H. KRAMER, SBN 168452<br>LAUREN GALLO WHITE, SBN 309075<br>KELLY M. KNOLL, SBN 305579<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone: (650) 493-9300<br>Facsimile: (650) 565-5100<br>Email: dkramer@wsgr.com<br>Email: lwhite@wsgr.com<br>Email: kknoll@wsgr.com | BRIAN M. WILLEN (admitted *pro hac vice*)<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019-6022<br>Telephone: (212) 999-5800<br>Facsimile: (212) 999-5899<br>Email: bwillen@wsgr.com |

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIVINO GROUP LLC, a California limited liability company, CHRIS KNIGHT, an individual, CELSO DULAY, an individual, CAMERON STIEHL, an individual, BRIAANDCHRISSY LLC, a Georgia limited liability company, BRIA KAM, an individual, CHRISSY CHAMBERS, an individual, CHASE ROSS, an individual, BRETT SOMERS, an individual, and LINDSAY AMER, an individual, STEPHANIE FROSCH, an individual, SAL CINEQUEMANI, an individual, TAMARA JOHNSON, an individual, and GREG SCARNICI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, a Delaware limited liability company, YOUTUBE, LLC, a Delaware limited liability company, and DOES 1-25,<br><br>Defendants. | CASE NO.: 5:19-cv-04749-VKD<br><br>**STATEMENT OF RECENT DECISION**<br><br>Judge: Hon. Virginia K. DeMarchi |

Defendants Google LLC and YouTube, LLC respectfully submit as supplemental authority the D.C. Circuit's recent decision in *Freedom Watch, Inc., et al. v. Google Inc., et al.*, No. 19-7030 (D.C. Cir. May 27, 2020) (Exhibit 1). *Freedom Watch* affirms the dismissal of claims, like Plaintiffs' in this case, based on the allegedly discriminatory treatment of plaintiffs' content by Google, YouTube, and other technology companies. Among other things, the decision rejected the plaintiffs' argument that because defendants "provide an important forum for speech, they are engaged in state action." Exhibit 1 at 2. The D.C. Circuit's decision joins the unbroken line of authorities holding that a First Amendment claim may not be maintained against Defendants.

Dated: May 27, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Lauren Gallo White
Lauren Gallo White

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

# Exhibit 1

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 19-7030**  **September Term, 2019**
FILED ON: MAY 27, 2020

FREEDOM WATCH, INC., INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED AND LAURA LOOMER, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED PALM BEACH, FLORIDA,
  APPELLANTS

v.

GOOGLE INC., ET AL.,
  APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02030)

Before: ROGERS and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*

### J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the decision of the district court be **AFFIRMED**.

Freedom Watch and Laura Loomer (collectively, "Freedom Watch") brought this suit against Google, Facebook, Twitter, and Apple (the "Platforms") alleging that they conspired to suppress conservative political views and violated the First Amendment, the Sherman Antitrust Act, and the District of Columbia Human Rights Act. The district court dismissed the complaint, holding that Freedom Watch had standing to sue but failed to allege colorable legal claims. *Freedom Watch, Inc. v. Google*, 368 F.Supp.3d 30, 36–37 (D.D.C. 2019). On appeal, we reach the same conclusion.

Freedom Watch has standing to bring this suit. Freedom Watch alleges that the Platforms conspired to suppress its audience and revenues, and succeeded in reducing each. As the district court concluded, this injury suffices for standing purposes. *Id.* at 36.

-2-

The Platforms protest this conclusion, arguing that Freedom Watch is unable to point to any actions by the Platforms that caused its alleged injury. With respect to Twitter and Facebook, Freedom Watch specifically alleges that those Platforms prevented Ms. Loomer from using their services. With respect to Google and Apple, standing rests on the general claim that those companies were engaged in a conspiracy against Freedom Watch. As the district court explained, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 36 (quoting *Osborn v. Visa Inc.*, 797 F.3d 1057, 1064 (D.C. Cir. 2015)). The general allegation that the Platforms conspired to suppress Freedom Watch's audience and revenue, combined with Freedom Watch's representations that its audience and revenue declined, suffices to establish standing.

Freedom Watch's First Amendment claim fails because it does not adequately allege that the Platforms can violate the First Amendment. In general, the First Amendment "prohibits only *governmental* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Freedom Watch contends that, because the Platforms provide an important forum for speech, they are engaged in state action. But, under *Halleck*, "a private entity who provides a forum for speech is not transformed by that fact alone into a state actor." *Id.* at 1930. Freedom Watch fails to point to additional facts indicating that these Platforms are engaged in state action and thus fails to state a viable First Amendment claim.

Freedom Watch also fails to state a viable claim under the Sherman Antitrust Act. To state a § 1 claim, a complainant must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Freedom Watch argues that we should infer an agreement primarily from the Platforms' parallel behavior, as each company purportedly refused to provide certain services to Freedom Watch. But, as the district court explained, parallel conduct alone cannot support a claim under the Sherman Act. *See Freedom Watch*, 368 F.Supp.3d at 37 (citing *Twombly*, 550 U.S. at 556 ("Without more, parallel conduct does not suggest conspiracy")). Freedom Watch puts forth two additional factors that it claims suggest conspiracy: that the Platforms are pursuing a revenue-losing strategy and that they are motivated by political goals. But Freedom Watch does not explain why either factor tends to show an unlawful conspiracy, rather than lawful independent action by the different Platforms. *See Freedom Watch*, 368 F.Supp.2d at 37–38.

Freedom Watch's § 2 claim is also deficient. To state a § 2 claim – collective monopolization by several parties or individual monopolization by a single party – a complainant must allege that monopoly powers were acquired through "anticompetitive conduct." *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis omitted). The only anticompetitive conduct that Freedom Watch alleges (without supporting factual allegations) is that the Platforms conspired against it to suppress conservative content, but not that the Platforms conspired to acquire or maintain monopoly power. A § 2 claim requires the latter allegation.

That leaves Freedom Watch's discrimination claim under the D.C. Human Rights Act. The Act prohibits discrimination on the basis of political affiliation in "any place of public

-3-

accommodations." D.C. CODE § 2-1402.31(a); *see also id.* § 2-1401.02(24). Relying on a D.C. Court of Appeals case interpreting that statute, *U.S. Jaycees v. Bloomfield*, 434 A.2d 1379 (D.C. 1981), the district court concluded that only physical places within the District of Columbia qualify as "places of public accommodation." *Freedom Watch*, 368 F.Supp.3d at 39. Because Freedom Watch had not alleged that the Platforms operated out of a particular place in D.C., but only that they do business in the District, the district court dismissed the claim. *Id*.

On appeal, Freedom Watch contests the district court's interpretation of "place of public accommodations." It is joined by the District of Columbia, which submitted an amicus brief on this issue. The District of Columbia argues that the district court's reliance on *Jaycees* is misplaced. It contends that *Jaycees* is not authoritative because it was a decision on a preliminary injunction rather than a final decision on the merits and that the D.C. Commission on Human Rights has interpreted the Human Rights Act to reject a physical location requirement, *Pool & Geller v. Boy Scouts of America*, Nos. 93-030-(PA) & 93-031-(PA) (D.C. Comm'n on Human Rights June 18, 2001).

When interpreting D.C. law, we strive "to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case." *Novak v. Capital Mgmt. & Dev. Corp.*, 42 F.3d 902, 907 (D.C. Cir. 2006). The D.C. Court of Appeals in *Jaycees* held that "places of public accommodation" under the D.C. Human Rights Act must operate from a "particular place". *Jaycees*, 434 A.2d at 1381–82.

The arguments to the contrary are unsuccessful. The District of Columbia argues that *Jaycees* is not binding, because it was a decision on a preliminary injunction and thus not a final legal conclusion. *See University of Texas v. Camenisch*, 41 U.S. 390, 395 (1981). Maybe so. But the D.C. Court of Appeals has interpreted this statute and at minimum, its interpretation is a reasonable one. We have no basis to believe it would reach a different conclusion on reconsideration. The *Pool & Geller* decision does not alter this analysis because the D.C. Court of Appeals reversed the Commission's decision, although it explicitly declined in that case to consider what qualified as a "place of public accommodation." *See Boy Scouts of Am. v. D.C. Comm'n on Human Rights*, 809 A.2d 1192, 1196 n.4 (D.C. 2002).

Freedom Watch argues that we should interpret this local statute more broadly to make it consistent with the Americans with Disabilities Act. That Act also contains a provision concerning places of "public accommodation," and several federal courts have concluded that clause sweeps wider than just physical places. *See, e.g., Carparts Distribution Ctr. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12, 19 (1st Cir. 1994). But as the district court noted, other federal courts have reached the opposite conclusion and held that only physical places qualify as places of public accommodation under the ADA. *See Freedom Watch*, 368 F.Supp.3d at 39. Moreover, the D.C. Court of Appeals is the arbiter of D.C. law and the definitions of "public accommodation" in the two laws are different from one another. The fact that other courts interpret another (though similar) statute differently is not a sufficient reason to deviate from *Jaycees*.

-4-

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. C<small>IR</small>. R. 41.

**P<small>ER</small> C<small>URIAM</small>**

                              **FOR THE COURT:**
                              Mark J. Langer, Clerk

BY:   /s/
        Daniel J. Reidy
        Deputy Clerk