DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
KELLY M. KNOLL, SBN 305579
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
Email: lwhite@wsgr.com
Email: kknoll@wsgr.com

BRIAN M. WILLEN (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIVINO GROUP LLC, a California limited liability company, CHRIS KNIGHT, an individual, CELSO DULAY, an individual, CAMERON STIEHL, an individual, BRIAANDCHRISSY LLC, a Georgia limited liability company, BRIA KAM, an individual, CHRISSY CHAMBERS, an individual, CHASE ROSS, an individual, BRETT SOMERS, an individual, and LINDSAY AMER, an individual, STEPHANIE FROSCH, an individual, SAL CINEQUEMANI, an individual, TAMARA JOHNSON, an individual, and GREG SCARNICI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, a Delaware limited liability company, YOUTUBE, LLC, a Delaware limited liability company, and DOES 1-25,<br><br>Defendants. | CASE NO.: 5:19-cv-04749-VKD<br><br>**STATEMENT OF RECENT DECISION**<br><br>Judge: Hon. Virginia K. DeMarchi |

Defendants Google LLC and YouTube, LLC respectfully submit as supplemental authority the recent decision from Judge Vince Chhabria in *Zimmerman, et al., v. Facebook, Inc.*, *et al.,* Case No. 19-cv-04591-VC, ECF No. 27 (N.D. Cal. October 2, 2020) (Exhibit 1). Like this case, *Zimmerman* involves an online service provider's decision to remove or restrict access to the plaintiffs' content on the provider's platform. The court held that Section 230(c)(1) applied to bar these claims, explaining "[a] social media site's decision to delete or block access to a user's individual profile falls squarely within this immunity." *Id*. at *1.

Dated:  October 5, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:   */s/ Lauren Gallo White*
     Lauren Gallo White

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

# Exhibit 1

2020 WL 5877863
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

ROBERT ZIMMERMAN, et al., Plaintiffs,

v.

FACEBOOK, INC., et al., Defendants.

Case No. 19-cv-04591-VC
|
10/02/2020

VINCE CHHABRIA, United States District Judge

## ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND IN PART Re: Dkt. No. 27

*1 The defendants' motion to dismiss the first amended complaint is granted in part. Most of the claims asserted in the complaint are privacy-related claims that overlap substantially with the lead case in the Facebook MDL. *See In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 18-md-2843-VC. Those claims are stayed pending adjudication or resolution of the MDL. *See* Fed. R. Civ. P. 42(a). The other claims are barred by the Communications Decency Act, 47 U.S.C. § 230, or by clear Ninth Circuit and Supreme Court precedent. Because these claims fail as a matter of law, leave to amend would be futile, and those claims are dismissed with prejudice. *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020).

The Court was clear that the plaintiffs had a choice with respect to their original lawsuit:

the lawsuit could be consolidated with the lead case in the MDL, or, if they preferred to pursue their unrelated claims immediately, they could do so by voluntarily dismissing the related claims and proceeding "solely on claims related to the blocking of [their] accounts." Pretrial Order No. 29 (Dkt. No. 21). The plaintiffs accepted this condition and voluntarily dismissed their privacy-related claims to pursue their account-related claims. *See* Notice of Voluntary Dismissal Without Prejudice (Dkt. No. 23). Despite this, the amended complaint asserts privacy-related claims based on the alleged mishandling of Facebook user data. For example, counts one, two, four, five, ten and seventeen

for civil RICO, unjust enrichment, computer fraud and abuse, civil conversion, civil conspiracy, and identity theft, respectively, all are supported by allegations relating to the Facebook defendants' allegedly unlawful use, disclosure, and monetization of Facebook User Information. *See* First Amended Compl. ¶¶ 1287-1371; 1425-1443; 1468-1481; 1497-1500 (Dkt. No. 25-2). Similarly, counts seven, eight, nine, and eleven for intentional misrepresentation, breach of contract, intentional infliction of emotional duress, and breach of the implied covenant of good faith and fair dealing also appear to be supported at least in part by allegations related to the alleged mishandling of user data. *See id.* ¶¶ 1449-1467; 1482-1488. In fact, the Facebook MDL complaint alleges some of the exact same causes of action based on substantially similar factual allegations. *See* Second Amended Consolidated Compl. in Case No. 18-md-2843-VC, Dkt. No. 491, ¶¶ 882-896 (claim for breach of contract); 963-978 (claim for breach of the implied covenant of good faith and fair dealing); 979-988 (claim for unjust enrichment); 1137-1155 (claim under RICO); 1370-1379 (claim for intentional misrepresentation).

The plaintiffs' claims relating to the defendants' decision to block access to their Facebook profiles are barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230. "Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties: 'No provider...of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.' " *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (quoting 47 U.S.C. § 230(c)) (footnotes omitted). The Ninth Circuit, in an en banc opinion, interpreted this section of the CDA "to immunize the *removal* of user-generated content, not the *creation* of content," such that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Id.* at 1163, 1170-71 (emphasis in original). A social media site's decision to delete or block access to a user's individual profile falls squarely within this immunity. *See Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011); *see also Federal Agency of News LLC v. Facebook, Inc.*, 395 F.Supp.3d 1295, 1304-1308 (N.D. Cal. 2019); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *3-5 (N.D. Cal. May 9, 2019); *Sikhs for*

*Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F.Supp.3d 1088, 1092-96 (N.D. Cal. 2015).

**\*2** The plaintiffs' claims that the defendants violated their constitutional rights also fail. As an initial matter, many of the plaintiffs' constitutional claims relate to Facebook's alleged misuse of user information and thus cannot be pursued separately from the MDL at this time. *See, e.g.,* First Amended Compl. ¶¶ 1401-1424 (alleging constitutional violations based on Facebook's use of the plaintiffs' user data and Facebook's dissemination of allegedly misleading information). This includes the plaintiffs' claims brought under the California and North Carolina constitutions, as these state-based constitutional claims appear to be partly based on a right to privacy and a right to free elections—both rights implicated by the privacy-related claims and not by the claims related to the blocking of the plaintiffs' accounts. *See* First Amended Compl. ¶¶ 1395-97.

To the extent that the constitutional claims are free speech claims premised on the blocking of the plaintiffs' accounts, they fail because Facebook is not a state actor. Claims brought under the federal constitution must be directed at conduct which can "be fairly attributable to the State." *Lugar v. Edmondson Oil Company*, 457 U.S. 922, 937 (1982). The same is true for claims brought under the California and North Carolina constitutions. *See Golden Gateway Center v. Golden Gateway Tenants Association*, 26 Cal. 4th 1013, 1031 (2001) (holding that California constitution's free speech clause "only protects against state action"); *Corum v. University of North Carolina Through Board of Governors*, 330 N.C. 761, 782 (1992) (noting that the rights guaranteed in the North Carolina constitution "are individual and personal rights entitled to protection against state action"). The plaintiffs argue that Facebook has become a "quasi-state actor" by operating a "digital town square" and providing a "public free speech forum." First Amended Compl. ¶¶ 1373, 1380-81. But the Ninth Circuit recently rejected these exact arguments in the context of constitutional claims brought against YouTube, and its reasoning is equally applicable here. *See Prager University v. Google LLC*, 951 F.3d 991, 995 (9th Cir. 2020) ("Despite YouTube's ubiquity and its role as a public-facing platform, it remains a private forum, not a public forum subject to judicial scrutiny under the First Amendment."); *see also Federal Agency of News LLC*, 395 F.Supp.3d at 1308-1314.

The plaintiffs' argument that Facebook is a state actor because of its joint action with government entities also does not save their constitutional claims. These allegations of joint action between Facebook and the Trump administration relate to the allegedly unlawful surveillance of user data and influence over federal elections. *See* Opposition to Motion to Dismiss at 15-16 (Dkt. No. 37). As already explained, these allegations pertain to the privacy-related claims brought in the Facebook MDL and do not relate to the blocking of the plaintiffs' user accounts. These allegations of joint action are thus insufficient to support the claims at issue here.

Finally, the plaintiffs' claims relating to Facebook's allegedly treasonous conduct fail because "[t]here is no private cause of action for treason." *Arunachalam v. Apple, Inc.*, 2018 WL 5023378, at \*5 (N.D. Cal. Oct. 16, 2018).

Because the plaintiffs' claims relating to their user accounts fail as a matter of law, amendment would be futile. The claims relating to the blocking of the plaintiffs' accounts are thus dismissed with prejudice.

The remaining claims all relate to privacy and overlap with the MDL. The plaintiffs earlier dismissed these claims without prejudice, but the Court interprets their inclusion in the Amended Complaint as a decision by the plaintiffs to re-allege them. Because, as described above, these claims overlap so substantially with the lead case in the Facebook MDL, for purposes of efficiency and judicial economy, they are stayed pending adjudication or resolution of the privacy claims in the MDL. *See* Fed. R. Civ. P. 42(a). This does not mean that the plaintiffs' privacy-related claims in this suit have been resolved or are no longer valid; it just means that no further action will be taken on them until the lead case has been resolved or adjudicated.

**\*3** The plaintiffs should also be aware that, if a class is certified in the lead case, they will have a chance to opt out of the class and pursue their claims on their own. If they choose to do this (rather than simply remaining as members of the class and allowing the lead plaintiffs and class counsel to represent them), their claims will nonetheless be stayed until after the lead case is adjudicated or resolved. After the MDL has been adjudicated or resolved, the plaintiffs may move to lift the stay in this case and proceed on their individual privacy claims.

ROBERT ZIMMERMAN, et al., Plaintiffs, v. FACEBOOK, INC., et..., Slip Copy (2020)

2020 WL 5877863

The plaintiffs are once again advised to contact the Northern District's Legal Help Desk for assistance in litigating this case pro se.

**IT IS SO ORDERED.**

Dated: October 2, 2020

VINCE CHHABRIA

United States District Judge

**All Citations**

Slip Copy, 2020 WL 5877863

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

---