DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
KELLY M. KNOLL, SBN 305579
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
Email: lwhite@wsgr.com
Email: kknoll@wsgr.com

BRIAN M. WILLEN (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIVINO GROUP LLC, a California limited liability company, CHRIS KNIGHT, an individual, CELSO DULAY, an individual, CAMERON STIEHL, an individual, BRIAANDCHRISSY LLC, a Georgia limited liability company, BRIA KAM, an individual, CHRISSY CHAMBERS, an individual, CHASE ROSS, an individual, BRETT SOMERS, an individual, and LINDSAY AMER, an individual, STEPHANIE FROSCH, an individual, SAL CINEQUEMANI, an individual, TAMARA JOHNSON, an individual, and GREG SCARNICI, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, a Delaware limited liability company, YOUTUBE, LLC, a Delaware limited liability company, and DOES 1-25, <br><br> Defendants. | CASE NO.: 5:19-cv-04749-VKD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT** <br><br> Date:  January 11, 2022 <br> Time:  10:00 a.m. <br> Place:  Ctrm 2 <br> Before:  Hon. Virginia K. DeMarchi |

# TABLE OF CONTENTS

**Page**

I.     PLAINTIFFS STATE NO VIABLE CAUSE OF ACTION ............................................. 1

    A.     Plaintiffs Fail To State A Claim Under The Lanham Act ....................................... 1

    B.     Plaintiffs Fail To State A Claim Under The California Constitution ..................... 3

    C.     Plaintiffs Fail To State A Claim Under The Unruh Act ......................................... 7

    D.     Plaintiffs Fail To State A Claim Under The UCL ................................................ 10

    E.     Plaintiffs Fail To State A Claim For Breach Of The Implied Covenant .............. 11

II.    PLAINTIFFS CANNOT EVADE THE PROTECTIONS OF SECTION 230 ................ 14

    A.     Defendants Did Not "Contract Out Of" Section 230 ........................................... 14

    B.     Section 230(c)(1) Applies To Plaintiffs' Claims ................................................. 15

    C.     The *Roommates* Exception Does Not Apply ...................................................... 16

    D.     Section 230(c)(2)(B) Protects YouTube's Decisions About Restricted Mode ..... 17

    E.     Section 230 Is Not Unconstitutional .................................................................... 18

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Albertson's, Inc. v. Young,*
 107 Cal. App. 4th 106 (Cal. Ct. App. 2003) ........................................................................4

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ...............................................................................................................6

*Asurvio Ltd. P'ship v. Malwarebytes Inc.,*
 2020 U.S. Dist. LEXIS 53906 (N.D. Cal. Mar. 26, 2020) .................................................18

*Barnes v. Yahoo!, Inc.,*
 570 F.3d 1096 (9th Cir. 2009).......................................................................................16, 17

*Brittain v. Twitter, Inc.,*
 2019 U.S. Dist. LEXIS 97132 (N.D. Cal. June 10, 2019) ..................................................16

*City of Oakland v. BP PLC,*
 969 F.3d 895 (9th Cir. 2020)................................................................................................3

*Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.,*
 173 F.3d 725 (9th Cir. 1999).................................................................................................2

*Darnaa, LLC v. Google LLC,*
 756 F. App'x 674 (9th Cir. 2018)........................................................................................14

*Denver Area Educ. Telecomm. Consortium, Inc. v. FCC,*
 518 U.S. 727 (1996) ......................................................................................................19, 20

*Domen v. Vimeo, Inc.,*
 2021 U.S. App. LEXIS 28995 (2d Cir. Sept. 24, 2021)............................................ *passim*

*Domen v. Vimeo, Inc.,*
 433 F. Supp. 3d 592 (S.D.N.Y. 2020) ............................................................................4, 15

*Duffield v. Robertson Stephens & Co.,*
 144 F.3d 1182 (9th Cir. 1998)..............................................................................................19

*Duronslet v. Cty. of L.A.,*
 266 F. Supp. 3d 1213 (C.D. Cal. 2017)................................................................................7

*Dyroff v. Ultimate Software Grp., Inc.,*
 934 F.3d 1093 (9th Cir. 2019)..............................................................................................17

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.,*
 938 F.3d 1026 (9th Cir. 2019)..............................................................................................16

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
    946 F.3d 1040 (9th Cir. 2019) ................................................................16, 17, 18

*Fair Housing Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ..................................................................................16

*Farmearl v. Storopack, Inc.*,
    2005 U.S. Dist. LEXIS 34293 (N.D. Cal. Sept. 12, 2005) ....................................13

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002) .........................................................................................2

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ..................................................................15

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) .......................................................................................17

*Green v. Am. Online (AOL), Inc.*,
    318 F.3d 465 (3d Cir. 2003) .....................................................................................20

*Hankins v. El Torito Rests., Inc.*,
    63 Cal. App. 4th 510 (1998) .......................................................................................7

*Harris v. Capital Growth Inv'rs XIV*,
    52 Cal. 3d 1142 (1991) ...............................................................................................7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) .................................................................4, 5

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
    515 U.S. 557 (1995) ....................................................................................................6

*Kifle v. YouTube, LLC*,
    2021 U.S. Dist. LEXIS 193604 (N.D. Cal. Oct. 5, 2021) ......................................16

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ..................................................................................18

*King v. Facebook, Inc.*,
    2019 U.S. Dist. LEXIS 151582 (N.D. Cal. Sept. 5, 2019) .....................................15

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ..................................................................................11

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020) ...............................................................12, 15

*Lewis v. Google LLC*,
    851 F. App'x 723 (9th Cir. 2021) ................................................................11, 20

*Lugar v. Edmondson Oil Co., Inc.*,
    457 U.S. 922 (1982) .........................................................................................19

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) ...........................................................14

*Mudd-Lyman Sales & Serv. Corp. v. UPS*,
    236 F. Supp. 2d 907 (N.D. Ill. 2002) ...............................................................14

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (Cal. Ct. App. 2021) ............................................15, 16, 17

*Newcal Indus. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ............................................................................2

*Newman v. Google LLC*,
    2021 U.S. Dist. LEXIS 119101 (N.D. Cal. June 25, 2021) ........................ *passim*

*Pac. Gas and Elec. Co. v. Pub. Utils. Comm'n*,
    475 U.S. 1 (1986) ...............................................................................................6

*Park Mgmt. Corp. v. In Def. of Animals*,
    36 Cal. App. 5th 649 (2019) .........................................................................3, 4

*Perry v. Lockheed Missiles & Space Co., Inc.*,
    76 F. App'x 821 (9th Cir. 2003) .......................................................................12

*Planned Parenthood v. Wilson*,
    234 Cal. App. 3d 1662 (Cal. Ct. App. 1991) .....................................................4

*Prager Univ. v. Google LLC*,
    2019 Cal. Super. LEXIS 2034 (Super. Ct. Cal. Nov. 19, 2019) ................. *passim*

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ..................................................................... *passim*

*Pruneyard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980) ..............................................................................................6

*Roberts v. AT&T Mobility LLC*,
    877 F.3d 833 (9th Cir. 2017) ...........................................................................19

*Robins v. Pruneyard Shopping Ctr.*,
    23 Cal. 3d 899 (1979) .....................................................................................3, 6

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) .................................................................15

*Snapkeys, Ltd. v. Google LLC*,
    2020 U.S. Dist. LEXIS 203172 (N.D. Cal. Oct. 30, 2020) ...................................11

*Song fi, Inc. v. Google Inc.*,
    72 F. Supp. 3d 53 (D.D.C. 2014) ..........................................................................14

*Sweet v. Google, Inc.*,
    2018 U.S. Dist. LEXIS 37591 (N.D. Cal. Mar. 7, 2018) ......................................13

*Trader Joe's Co. v. Progressive Campaigns*,
    73 Cal. App. 4th 425 (Cal. Ct. App. 1999) .............................................................4

*Vargas v. Facebook, Inc.*,
    2021 U.S. Dist. LEXIS 158259 (N.D. Cal. Aug. 20, 2021) ....................................9

*Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ..............................................................................................14

*Wayne v. DHL Worldwide Express*,
    294 F.3d 1179 (9th Cir. 2002) .................................................................................3

*Wilson v. Twitter, Inc.*,
    2020 U.S. Dist. LEXIS 187851 (S.D. W. Va. Sept. 17, 2020) ......................10, 15

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009) ...............................................................................18

**STATUTES**

15 U.S.C. § 1051 et seq. ...................................................................................1, 2, 3

28 U.S.C. § 1332(d)(8) ............................................................................................3

28 U.S.C. § 1367 .....................................................................................................3

47 U.S.C. § 230(c)(1) ..................................................................................... *passim*

47 U.S.C. § 230(c)(2) ...............................................................................17, 18, 20

Cal. Bus. & Prof. Code § 17200 et seq. ...........................................................10, 11

Cal. Civ. Code. § 51 et seq. ............................................................................ *passim*

**RULES**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................2

    -v-    

1      Plaintiffs attempt to save their Third Amended Complaint ("TAC") with unpleaded

2   allegations, misleading rhetoric, and legal arguments that have been rejected by numerous courts,

3   including this one. The Court should again dismiss this case, this time with prejudice.

4   **I.      PLAINTIFFS STATE NO VIABLE CAUSE OF ACTION**

5          **A.      Plaintiffs Fail To State A Claim Under The Lanham Act**

6      Having pleaded no new facts in support of their dismissed Lanham Act claim, Plaintiffs

7   are left to repeat arguments that have been repeatedly rejected—first by the Ninth Circuit in

8   *Prager*, then by this Court, and most recently by Judge Koh in *Newman*. Indeed, Plaintiffs barely

9   gesture at this Court's prior ruling on the Lanham Act, and they avoid any mention of *Newman* at

10  all. Plaintiffs' [Corrected] Opposition (Dkt. No. 85, "Opp.") at 2-5.

11     As before, Plaintiffs' theory is that YouTube committed false advertising by posting a

12  notice informing users that certain of their videos were not available in Restricted Mode.

13  Plaintiffs claim to challenge "Defendants' 'specific statements' that LGBTQ+ videos are

14  'restricted' or 'unavailable' in Restricted Mode," which, Plaintiffs allege, amount to

15  "representations that LGBTQ+ videos contain 'inappropriate' material, when they do not." Opp.

16  at 3-4. While Plaintiffs suggest that the statements at issue here are different from those

17  addressed in prior decisions (Opp. at 3), that is incorrect: This is exactly the theory that was

18  dismissed in *Prager*, by this Court's prior order, and in *Newman*. *Prager Univ. v. Google LLC,*

19  951 F.3d 991, 1000 (9th Cir. 2020) ("*Prager III*") (notice stating that video is "unavailable with

20  Restricted Mode enabled" does "not have 'a tendency to mislead, confuse or deceive' the public

21  about the nature of PragerU's videos"); Order at 13-14 (explaining that *Prager* rejected false-

22  advertising claim based on the same "statements about videos being unavailable in Restricted

23  Mode"); *Newman v. Google LLC*, 2021 U.S. Dist. LEXIS 119101, at *35 (N.D. Cal. June 25,

24  2021) ("This is the exact statement that the Ninth Circuit found not actionable under the Lanham

25  Act in *Prager III*."). As a matter of binding law, YouTube's Restricted Mode notices are not

26  misleading statements of fact about Plaintiffs' videos. Plaintiffs can keep saying the same thing,

27  but it does not change the result.

28     Plaintiffs nevertheless argue that the notices somehow convey information about the

1   content of those videos—namely, that such videos contain "nudity, vulgarity, violence, hate,

2   shocking or sexually explicit material." Opp. at 4. But, as Defendants have explained (Motion to

3   Dismiss ("MTD") at 7-8 & n.8), this argument (beyond being untrue) is equally foreclosed. *See*

4   *Prager III*, 951 F.3d at 1000 ("the fact that certain PragerU videos were tagged to be unavailable

5   under Restricted Mode does not imply any specific representation about those videos"); Order at

6   13-14; *Newman*, 2021 U.S. Dist. LEXIS 119101, at *34-36. Here again, the Opposition offers

7   nothing new, and certainly nothing that could escape binding precedent or law of the case.

8       Equally unavailing are Plaintiffs' efforts to skirt the "commonsense conclusion" adopted

9   by the Ninth Circuit "that representations related to Restricted Mode . . . are not advertisements

10  or a promotional campaign." *Prager III*, 951 F.3d at 1000. Here too, Plaintiffs retread old

11  ground. They argue that Defendants' statements about Plaintiffs' videos were made to "gain a

12  competitive advantage" by "influencing users and advertisers to watch Defendants' videos,"

13  rather than Plaintiffs'. Opp. at 5. Setting aside the sheer implausibility of this theory, it also has

14  been rejected by this Court (Order at 14), and by Judge Koh (*Newman*, 2021 U.S. Dist. LEXIS

15  119101, at *36).

16      Having nothing new to say, and with no meaningful response to the separate causation

17  problem with their claim (MTD at 8-9), Plaintiffs fall back on the suggestion that "the

18  commercial nature and impact of the notices, is, at a minimum, an issue that cannot be decided as

19  a matter of pure law under Federal Rule of Civil Procedure 12(b)(6)." Opp. at 4. But that, of

20  course, is directly contrary to *Prager* (and this Court's Order, and *Newman*)—which held, as a

21  matter of law, that these same statements did not constitute commercial advertising. *Prager III*,

22  951 F.3d at 999-1000; Order at 14; *Newman*, 2021 U.S. Dist. LEXIS 119101, at *36-37.[1]

23  Plaintiffs have no viable Lanham Act claim here.

24  _____

25      [1] The cases that Plaintiffs rely on (Opp. at 4-5 (citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002); *Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999); and *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038 (9th Cir. 2008))) do not suggest that whether statements qualify as "commercial advertising" cannot be determined without factfinding. Notably, *Ikon* involved the "broad dissemination of pieces of promotional literature" by thousands of "sales representatives" (513 F.3d at 1054), which is nothing like what is alleged here. Indeed, the Ninth Circuit cited all three of those cases in

26

27

28

* * *

This dispenses with Plaintiffs' sole federal claim. But should the Court elect to address Plaintiffs' state law claims, they fail as well.[2]

### B.    Plaintiffs Fail To State A Claim Under The California Constitution

Plaintiffs ask this Court to apply the California Constitution in an entirely unprecedented manner. No case has ever held that California's limited doctrine providing for constitutional protections for expressive activity on certain real property should apply to entirely virtual online spaces, much less to private online services that make countless editorial decisions about what kinds of content is or is not permitted on their platforms. Plaintiffs cannot explain why a federal court should significantly expand a limited line of state court cases—a result that was squarely rejected in *Prager II, see* 2019 Cal. Super. LEXIS 2034, at *17 (Super. Ct. Cal. Nov. 19, 2019), and that would run headlong into YouTube's own rights under the First Amendment. MTD at 11-12.

Relying on *Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899 (1979), *aff'd*, 447 U.S. 74 (1980), and related cases, Plaintiffs ask the Court to consider whether YouTube's services are the "functional equivalent of a public forum." Opp. at 21 (quoting *Park Mgmt. Corp. v. In Def. of*

---

*Prager III*, but still held (at the pleadings stage) that YouTube's statements about Restricted Mode are not commercial advertising under the Lanham Act. *See* 951 F.3d at 999-1000.

[2] In response to this Court's prior order declining to exercise supplemental jurisdiction over Plaintiffs' state law claims, Plaintiffs assert three theories: they claim, first, that they satisfy the requirements for CAFA jurisdiction; second, that this Court should exercise supplemental jurisdiction under 28 U.S.C. § 1367; and, third, that their claims fit into the narrow exception for federal question jurisdiction over state claims because of Defendants' anticipated Section 230 defense. Opp. at 5-9. As the Opposition only confirms, Plaintiffs' allegations regarding the amount-in-controversy in support of CAFA jurisdiction remain conclusory. *Id.* at 6-7. And Defendants' arguments regarding Section 230 plainly do not create federal question jurisdiction, as the Section 230 defense is not "necessarily raised." *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) (exception to well-pleaded complaint rule requires that the federal issue be "necessarily raised"); *accord Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) ("[T]he existence of a defense based upon federal law is insufficient to support jurisdiction."). The question then is whether, in light of the minimal amendments to the TAC, there is now value in exercising supplemental jurisdiction in order to decide the questions of state law. Defendants take no position on that, but if the Court wishes to exercise supplemental jurisdiction, Plaintiffs' state law claims fail on the merits.

*Animals*, 36 Cal. App. 5th 649, 666 (2019)). As Defendants have explained, however, this line of cases is ill-suited for being expanded into the very different terrain of the Internet. MTD at 11-12 (discussing *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017), and *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 607 (S.D.N.Y. 2020)).[3] While Plaintiffs argue that California courts have declined to affirmatively limit the doctrine to certain forms of property (Opp. at 21, 23), it is both undeniable and significant that these cases all deal with real property. *See, e.g.*, *Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106, 122 (Cal. Ct. App. 2003) (grocery store not a public forum)*; Trader Joe's Co. v. Progressive Campaigns*, 73 Cal. App. 4th 425, 427 (Cal. Ct. App. 1999) (Trader Joe's store not a public forum); *Planned Parenthood v. Wilson*, 234 Cal. App. 3d 1662, 1674 (Cal. Ct. App. 1991) (abortion clinic parking lot not a public forum). Indeed, the leading case they cite turned in material part on (1) the geographic footprint of the amusement park at issue and (2) how it was treated under local zoning law. *Park Mgmt.*, 36 Cal. App. 5th at 661-63. No decision in this line has ever suggested that it could or should be expanded into online spaces—and the principles courts have adopted in cases involving real property cannot simply be carried over to wholly virtual spaces.

But even under this line of cases, Plaintiffs' claim fails. Those cases state that, "at the highest level of generality, private property constitutes a public forum if the property is open to the public 'in the same manner as public streets or parks.'" *Park Mgmt.*, 36 Cal. App. 5th at 659 (citation omitted). That is not true even of YouTube's general service,[4] but as Defendants have

---

[3] Both *hiQ* and *Domen* were affirmed on appeal on different grounds, but that does not undermine those courts' decisive rejection of those claims or make the similar claim Plaintiffs seek to assert here any more viable. Plaintiffs' assertion that the Second Circuit "expressly declined" to support the district court's ruling in *Domen* is incorrect. Far from disagreeing with the district court, the Second Circuit explained that the plaintiffs there did "not make any arguments regarding their state constitutional free speech claim in their opening brief and have therefore waived the ability to challenge its dismissal in this appeal." *Domen v. Vimeo, Inc.*, 2021 U.S. App. LEXIS 28995, at *9 (2d Cir. Sept. 24, 2021) (summary order), *vacating and replacing* 6 F.4th 245, 250 (2d Cir. 2021) (same).

[4] As the TAC makes clear, YouTube has numerous and detailed rules for what kind of content is unwelcome on its platform, which it enforces by removing or limiting access to such material. TAC ¶¶ 10, 34, 73, 96. On top of that, Plaintiffs acknowledge that various aspects of YouTube's service—including the ability to post content—"require the consumer to open an

explained (MTD at 12), this case involves far more limited aspects of YouTube. Plaintiffs here challenge particular features of YouTube's service—Restricted Mode and YouTube's Partner Program—that are by definition not freely and openly accessible to the public. The TAC itself recognizes that Restricted Mode "limit[s] access" to certain content by design (TAC ¶ 91); indeed, the whole point of Restricted Mode is to be restrictive. Likewise, YouTube puts strict content-based limits on what videos can be monetized. TAC ¶¶ 68, 151-52, 336-337; Willen Decl., Exs. 6, 9. Plaintiffs ignore this, but it would be entirely unsupported by any principle of California law to declare that these inherently exclusive spaces are public forums, from which YouTube can exclude content only within the strict confines of the California Constitution. *See Prager II*, 2019 Cal. Super. LEXIS 2034, at \*16 (Restricted Mode and YouTube's advertising service "are nothing like a traditional public forum"). Indeed, that result would all but make Restricted Mode and YouTube's advertising services unusable, leaving them all but defenseless against a wide array of highly objectionable, but constitutionally protected, matter—from pornography to graphic violence to racist hate speech.

Plaintiffs also argue that YouTube has in effect declared itself a public forum, either by admitting that it is ubiquitous or by inviting the public to use the service to express themselves. Opp. at 22-23. This Court (and the Ninth Circuit) has already rejected both of those "opt-in" arguments in the First Amendment context, and Plaintiffs offer no reason why they are any more viable in the context of California's constitutional analogue. Order at 8 (citing *Prager III*, 951 F.3d at 999). Plaintiffs similarly miss the point in citing cases discussing California's anti-SLAPP law. As previous decisions have recognized, whether a party is protected by that law has no bearing on whether it qualifies as a public forum under the California Constitution, such that otherwise private conduct becomes potentially unconstitutional state action. *hiQ*, 273 F. Supp. 3d at 1117. Indeed, that result would turn the anti-SLAPP law on its head, transforming an important *protection* for private speech into a tool for imposing unprecedented constitutional

---

account and sign in" (Opp. at 16 n.3). All of this further distinguishes YouTube's services from the kinds of real property that have been found to be public forums under the California Constitution. Opp. at 16 n.3.

*limitations* on such speech.[5]

Finally, Plaintiffs have no good response to the overarching problem that further rules out any expansion of California's constitutional speech rules in this case—YouTube's own First Amendment rights. MTD at 12. Plaintiffs' reliance on the U.S. Supreme Court's decision in *Pruneyard* is misplaced. *Pruneyard* held that a shopping mall owner's First Amendment rights were not violated by being required to open its property up for at least some expressive activity "under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations." *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 78 (1980) (quoting *Robins*, 23 Cal. 3d at 911). The Court concluded that there was no "intrusion into the function of editors" where the shopping mall's operation of its business lacked an editorial function. *Id.* at 88. Significantly, "the owner did not even allege that he objected to the content of the pamphlets; nor was the access right content based." *Pac. Gas and Elec. Co. v. Pub. Utils. Comm'n*, 475 U.S. 1, 12 (1986) (plurality op.); *accord Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 580 (1995) ("*Pruneyard* did not involve 'any concern that access to this area might affect the shopping center owner's exercise of his own right to speak.'").

The situation in this case is totally different. In deciding what videos can appear in Restricted Mode or be paired with advertisements, YouTube is engaged in expressive editorial choices that send a message about the type of communities and discourse it wishes to foster. "*Pruneyard* [] does not undercut the proposition that forced associations that burden protected speech are impermissible." *Pac. Gas and Elec. Co.*, 475 U.S. at 12. That is exactly what is at issue here. Plaintiffs' effort to expand California law to override YouTube's protected editorial judgments and force association with objectionable content is barred by the First Amendment. At a minimum, constitutional avoidance requires this Court to avoid putting state law into potential

---

[5] Nor is it correct that whether YouTube's services are subject to the California Constitution may only be resolved "after the parties have completed the factual discovery required" to determine the nature of the forum. Opp. at 22. This claim is no different than any other claim, which can be dismissed where, as here, the factual allegations in the complaint, taken as true, do not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Indeed, virtually the same claim was dismissed on the pleadings in *Prager II*. 2019 Cal. Super. LEXIS 2034, at *15-17; *see also Domen*, 2021 U.S. App. LEXIS 28995, at *13 (same).

conflict with the Constitution. Either way, Plaintiffs' claim should be dismissed.

## C.   Plaintiffs Fail To State A Claim Under The Unruh Act

Defendants' motion explained that the Unruh Act claim is based not on any plausible allegation of intentional discrimination against Plaintiffs because of their sexual orientation, but on frustration at how certain of Plaintiffs' videos were affected by YouTube's facially non-discriminatory content policies. MTD at 13-16. In response, Plaintiffs do not identify any actual Restricted Mode or video-monetization policy that discriminates on the basis of sexual orientation. Nor do they suggest that any Plaintiff has been categorically excluded from Restricted Mode or from monetizing their videos. This alone undermines their discrimination claim—revealing, at most, an impermissible disparate-impact claim, like the claim dismissed in *Newman*. 2021 U.S. Dist. LEXIS 119101, at *19.

Unable to point to concrete factual allegations or law suggesting otherwise,[6] Plaintiffs turn to misleading and unsupported rhetoric. They assert that (1) "Defendants have a policy of denying Services to Plaintiffs because of the 'gay thing,'" and (2) "Defendants have knowingly used artificial intelligence algorithms, metadata and automated systems that 'target' LGBTQ users." Opp. at 18. These inflammatory assertions collapse upon inspection.

The former is based on the transcript of a phone call that one Plaintiff had with a Google call center. That transcript was attached as an exhibit to Plaintiffs' SAC (Ex. A), but Plaintiffs failed to attach it to the TAC. Perhaps this was an oversight, but the Opposition seizes the opportunity to mischaracterize the contents of the transcript, just as the TAC did. Opp. at 14; *compare, e.g.*, TAC ¶ 155, *with* SAC, Ex. A. If the Court considers these allegations, it should review the transcript and compare it to Plaintiffs' conclusory (and misleading) allegations. The

---

[6] Plaintiffs cite only three cases in defense of their Unruh Act claim (Opp. at 18-19), none of which considered claims anything like this one. In fact, only one of Plaintiffs' cases found a violation of the Unruh Act—based on an overt policy of total exclusion against a protected class (which, of course, is not remotely alleged here). *Hankins v. El Torito Rests., Inc.*, 63 Cal. App. 4th 510, 518 (1998) (handicapped restaurant patrons denied access to restroom); *see also Duronslet v. Cty. of L.A.*, 266 F. Supp. 3d 1213, 1217-18 (C.D. Cal. 2017) (public agency's denial of male bathroom access to transgender minor not intentional discrimination); *Harris v. Capital Growth Inv'rs XIV*, 52 Cal. 3d 1142, 1175 (1991) (same, for apartment complex's policy requiring applicants to meet income thresholds).

transcript indicates that a single "floor manager" at an overseas Google call center apparently said that a video ad that Mr. Knight was trying to run on Google's ad network was disapproved because of "the gay thing." SAC, Ex. A. Whatever that means, it has nothing to do with the actual claims in this case—which are not about Plaintiffs' efforts to buy ads from Google, but about the appearance of their videos in YouTube's Restricted Mode and their ability to monetize their YouTube videos. An isolated remark by a random Google agent about an unrelated issue has no bearing on that.

Even taken on its own terms, moreover, the call center episode does not support Plaintiffs' discrimination claim. Plaintiffs do not claim, nor could they, that Mr. Knight's ad was actually disapproved; to the contrary, it was allowed to run, and did in fact run, MTD at 14 n.11; TAC ¶ 144. Plaintiffs argue that a Google representative apologizing for the misunderstanding with the call center surrounding the ad constituted a "concession" that Defendants have intentionally discriminated against the LGBTQ+ community. Opp. at 18. But neither the call center transcript, nor any fact actually pleaded in the TAC, creates a plausible basis for concluding that YouTube has policy of denying services—and certainly not the Restricted Mode and video-monetization services at issue here—to Mr. Knight (much less any other Plaintiff) because of sexual orientation. MTD at 14.

That is equally true for Plaintiffs' "algorithms that target LGBTQ users" theory. This theory is based on a declaration from Plaintiff Stephanie Frosch, which purports to describe a meeting in which YouTube invited creators to discuss YouTube's advertising policies, including the company's efforts to fine-tune its algorithms that facilitate targeted ads. Opp. at 18-19. Unlike the call center transcript, the Frosch Declaration was not attached to any iteration of Plaintiffs' complaint. Instead, Plaintiffs submitted it in connection with their Motion for Leave to File Sur-Reply Brief to Defendants' Motion to Dismiss the Second Amended Complaint. Dkt. No. 40. Notably, however, ***this Court rejected consideration of the Frosch Declaration***, explaining that it would not be "appropriate" for Plaintiffs to brief "evidence that is not referenced in the operative complaint that is the subject of defendants' motion to dismiss." Dkt. No. 42 at 1. Despite being on notice that they needed to include the Frosch Declaration in their

complaint if they wished to use it to support their claims, Plaintiffs again failed to do so. Instead, Plaintiffs claim that Ms. Frosch is bound by an NDA that prevents them from doing so. TAC ¶ 235. But that is plainly false; Plaintiffs themselves have told the Court that Ms. Frosch was released from any potential NDA in March 2020. Dkt. No. 40 at 8. Given all that, it is remarkable for Plaintiffs to chide Defendants for being "silent" about the Frosch Declaration in their motion. Opp. at 18-19. Not only did Defendants have no obligation to address a document that Plaintiffs affirmatively elected not to plead, it is plainly inappropriate (as this Court has already ruled) for Plaintiffs to now make arguments about that unpleaded document in their opposition.

Plaintiffs' effort to play hide-the-ball perhaps reflects the fact that the Frosch Declaration, if considered, would only make clear that Plaintiffs have no viable Unruh Act claim. Indeed, while the Declaration is a one-sided hearsay account, what it actually says is not what Plaintiffs now claim. As Judge Koh found in *Newman*, Ms. Frosch's assertions are impermissibly "vague" and fail to identify any supposedly intentional bias or discrimination "in the filtering and demonetization of content creators' videos." 2021 U.S. Dist. LEXIS 119101, at *22. That is correct: The Frosch Declaration does not make or support any suggestion that Plaintiffs' videos were excluded from Restricted Mode or demonetized based on that creator's sexual orientation or gender identity.

Instead, the Frosch Declaration alleges in general terms that YouTube has algorithms that identify users by various characteristics *in order to enable advertisers to deliver targeted advertising based on user demographics*.[7] But ad targeting is not at issue here, *cf. Vargas v. Facebook, Inc.*, 2021 U.S. Dist. LEXIS 158259, at *9 (N.D. Cal. Aug. 20, 2021), *appeal docketed*, No. 21-16499 (9th Cir. Sept. 10, 2021) (dismissing discrimination claim arising from

---

[7] Frosch Decl. ¶ 16.c ("*The artificial intelligence algorithm identifies people*, including the racial or sexual identities or viewpoints of the creator or viewers when filtering and curating content . . . due in part to the fact that *advertisers want to be able to target audiences based on the demographics of the creators and their audiences*." (emphasis added)), ¶ 24(a) (YouTube's system was "profiling creators and viewers for YouTube's advertisers so that the advertisers could target audiences based on personal identity").

advertiser's use of Facebook's "Targeted Ad" tools), and neither the Frosch Declaration nor anything actually pleaded in the TAC alleges that YouTube's systems are deliberately singling out LGBTQ+ content creators for disfavorable treatment—whether in terms of when their videos can appear in Restricted Mode or when they can be monetized.[8] Nor do Plaintiffs offer any "comparison to similarly situated persons not sharing [their] protected characteristic who were treated preferentially." *Domen*, 2021 U.S. App. LEXIS 28995, at *11-12 (affirming dismissal of similar Unruh Act claim where plaintiff's allegations about "similar videos" were "vanishingly thin and lack the substance required to support an inference of discriminatory intent").

In short, as in *Newman*, "Plaintiffs' only factual allegation in support of an inference that Defendants intentionally and purposefully discriminated against Plaintiffs is Plaintiffs' belief that Defendants' moderation decisions were made because of Plaintiffs' race"—which "is insufficient to satisfy federal pleading standards." 2021 U.S. Dist. LEXIS 119101, at *18; *accord Wilson v. Twitter, Inc.*, 2020 U.S. Dist. LEXIS 187851, at *8-9 (S.D. W. Va. Sept. 17, 2020) (dismissing discrimination claim against Twitter).

### D.    Plaintiffs Fail To State A Claim Under The UCL

The Opposition confirms that Plaintiffs have no viable UCL claim. Plaintiffs do not dispute that a claim under the unlawfulness prong fails in the absence of a separate predicate violation of law—which does not exist here. MTD at 16. Nor do Plaintiffs attempt to defend a claim under the fraud prong. They have thus abandoned any such claim.

While Plaintiffs do little to clarify their claim under the "unfairness" prong, they apparently seek to proceed under both the business-competition standard and the separate standard for consumer claims. Opp. at 20. As Defendants have explained (MTD at 16-17), Plaintiffs' only effort to meet the strict *Cel-Tech* standard for competition-based claims is by

---

[8] Plaintiffs vaguely gesture to YouTube's 2017 blog posts as evidence of Defendants' supposed "admissions" (Opp. at 29 (citing TAC ¶¶ 106, 140, 142)). They are no such thing (*see* Dkt. Nos. 37-2, 37-3), and Judge Koh rightly brushed them aside in *Newman*—in part because they did not speak to the experiences of any of the actual plaintiffs. 2021 U.S. Dist. LEXIS 119101, at *20-21. The same is true here. In any event, saying that the systems that help determine what videos should appear in Restricted Mode do not always work as intended is a far cry from intentional discrimination.

gesturing toward a handful of conclusory allegations that YouTube competes with Plaintiffs by posting its own content. TAC ¶¶ 256-257, 259-262. The thrust of these allegations seems to be that YouTube placed restrictions on Plaintiffs' videos but not on videos posted by Defendants themselves (or other third parties). Opp. at 20. Whatever else might be said about this (MTD at 17), it does not suggest that YouTube's conduct amounts to an antitrust violation—they do not give any indication that YouTube harmed *competition* (as opposed to individual supposed competitors). *See, e.g.*, *Snapkeys, Ltd. v. Google LLC*, 2020 U.S. Dist. LEXIS 203172, at *13-14 (N.D. Cal. Oct. 30, 2020) (dismissing UCL claim where plaintiff "fail[ed] to allege specific facts demonstrating significant harm to competition in the market as a whole"); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014) (allegation that "conduct unfairly injures [plaintiff's] economic interests" failed to establish injury to competition under UCL).

As for any consumer unfairness theory, Plaintiffs make no effort to respond to the arguments in Defendants' opening brief or even to articulate a theory based on any of the unfairness tests that courts have applied. Indeed, Plaintiffs do not cite a single case in support of a consumer unfairness theory. They instead gesture toward a handful of their own conclusory allegations that Defendants "employ[] artificial intelligence algorithms, metadata and automated systems based on gender and sexual orientation." Opp. at 20. But, as explained above (*supra* pp. 7-10), this assertion totally misrepresents what the relevant documents actually say. Plaintiffs cannot predicate an unfairness claim on these allegations or use the UCL to save an unsupported Unruh Act discrimination claim.

### E.   Plaintiffs Fail To State A Claim For Breach Of The Implied Covenant

Plaintiffs do not dispute that YouTube's Terms of Service, along with its agreements governing monetization and advertising, give YouTube the express right to restrict access to videos and to determine whether they are eligible to be monetized. MTD at 18; *e.g.*, Ramos Decl., Ex. D; Willen Decl., Ex. 1. As confirmed by the Ninth Circuit, that reality bars any implied-covenant claim: "YouTube's removal or demonetization of [plaintiff's] videos, when YouTube determined them to violate the Guidelines, cannot support a claim for breach of the implied covenant of good faith and fair dealing." *Lewis v. Google LLC*, 851 F. App'x 723, 725

1  (9th Cir. 2021), *petition for cert. filed*, No. 21-419 (Sept. 13, 2021); *accord* MTD at 18-19

2  (similar cases).

3       Plaintiffs ignore this law and instead try to create confusion by claiming that the question

4  is whether the contract specifically includes the discretion to use "artificial intelligence

5  algorithms, metadata or automated systems." Opp. at 11.[9] This purported distinction is wholly

6  artificial: The broad language of the Terms of Service establishes YouTube's right to "remove,

7  restrict, demonetize, or demote" content (*Lewis v. Google LLC*, 461 F. Supp. 3d 938, 950 (N.D.

8  Cal. 2020)); MTD at 18—it makes no difference whether such actions are undertaken by human

9  reviewers or automated means. Exercising its contractual rights by way of the latter does not

10 breach any implied covenant.[10]

11      Plaintiffs also try to conflate their implied-covenant claim with their Unruh Act claim.

12 The Opposition argues that "[YouTube's] TOS does not authorize Defendants to use artificial

13 intelligence algorithms, metadata or automated systems to filter based on Plaintiffs' personal

14 sexual orientation or gender identity." Opp. at 11, 13-14. Plaintiffs cite no authority that allows

15 this conflation, but in any event any such hybrid claim fails for the same reasons that Plaintiffs'

16 actual discrimination claim fails. *See, e.g.*, *Perry v. Lockheed Missiles & Space Co., Inc.*, 76 F.

17

_____

18      [9] Plaintiffs also attempt to muddy the waters by introducing various versions of YouTube's

19 Terms of Service. *See* Decl. of Debi Ramos in Support of Plaintiffs' Request for Judicial Notice
   (Dkt. No. 82, "Ramos Decl."). The TAC relied on the Terms of Service (along with other

20 "agreement(s)" the parties entered into "in connection with Plaintiffs' use and access to
   YouTube and . . . related services") to allege an implied-covenant claim (TAC ¶¶ 336-337), but

21 failed to append any of the relevant provisions that undergird that cause of action. In an effort to
   provide additional context to Plaintiffs' imprecise allegations, Defendants' motion provided the

22 version of YouTube's Terms of Service quoted in the TAC (¶ 308; Willen Decl. ¶ 2, Ex. 1), in
   addition to related agreements and policies referenced in the TAC. MTD at 5 n.5. In the

23 Opposition, Plaintiffs offer no objection to the Court's consideration of these documents in
   deciding YouTube's motion.

24

25      [10] Indeed, the documents Plaintiffs attach to their request for judicial notice only confirm that
   users are repeatedly informed that YouTube's service relies on metadata and automation when

26 screening content. *E.g.*, Ramos Decl., Ex. B at at 709 ("We use many signals—such as video
   title, description, metadata, Community Guidelines reviews, and age-restrictions—to identify

27 and filter out potentially mature content."); *id.* at 997 (Advertiser-friendly content guidelines:
   "Our systems don't always get it right, but you can request human review of decisions made by

28 our automated systems.").

_____

App'x 821, 824 (9th Cir. 2003) ("[H]aving failed to demonstrate that Lockheed discriminated against her—these same allegations cannot form the basis of a viable theory of a breach of an implied covenant of good faith and fair dealing."); *Farmearl v. Storopack, Inc.*, 2005 U.S. Dist. LEXIS 34293, at *30 (N.D. Cal. Sept. 12, 2005) (explaining that, because federal law required defendant "to refrain from discrimination and harassment, [plaintiff] cannot predicate a breach of contract claim upon Storopack's alleged failure to do so"); *accord* MTD at 2, 7, 9-10.

Plaintiffs' new theory that Defendants' "repeated unilateral material modifications of the TOS and related policies" constitute breaches of the implied covenant (Opp. at 14) is equally misguided. Most of the modifications that Plaintiffs attempt to rely on identify general YouTube policy changes that the TAC admits applied to all users, and thus cannot support Plaintiffs' implied covenant theory, which is based on the idea that YouTube took actions "based on Plaintiffs' personal sexual orientation or gender identity." Opp. at 11; *see* TAC ¶¶ 127-29, 154, 156, 174, 183. The other purported modifications concern individual discretionary decisions made *under* the contract—not revisions to its terms. TAC ¶¶ 155, 184-85, 257, 259-60. Plaintiffs do not, and cannot, explain why any of this supports an implied-covenant claim.

Plaintiffs next contend that YouTube's Terms of Service would be illusory without the implied covenant they wish to impose. Opp. at 14-15. This too is unpleaded, but it is also misguided. Plaintiffs' argument depends on the (unsupported) premise that using and placing content on YouTube—a service that Plaintiffs neither own nor operate—is not a benefit amounting to consideration. But the Terms of Service clearly lay out a mutual exchange: For example, by agreeing to the contract and its conditions, users are able to "upload Content to the Service." Willen Decl., Ex. 1. Indeed, numerous courts have found that YouTube's terms create a contract "supported by adequate independent consideration" because the "ability to post videos, even without advertising revenues, can be valuable to content providers in reaching a wide audience." *Sweet v. Google, Inc.,* 2018 U.S. Dist. LEXIS 37591, at *24-26 (N.D. Cal. Mar. 7, 2018) ("the provision of the Partner Program Terms conferring upon YouTube complete control over decisions regarding advertisements need not be deemed subject to the implied covenant of good faith and fair dealing in order to prevent the agreement from being illusory");

1  *accord Prager II*, 2019 Cal. Super. LEXIS 2034, at *31-32; *Mishiyev v. Alphabet, Inc.*, 444 F.

2  Supp. 3d 1154, 1159 (N.D. Cal. 2020), *aff'd*, 857 F. App'x 907 (9th Cir. 2021).[11]

3        At bottom, Plaintiffs' implied-covenant arguments are a futile effort to complicate a

4  simple issue. An unbroken line of cases has found YouTube's governing agreements to be valid

5  and enforceable, and has rejected contract-based claims against YouTube for doing precisely

6  what those agreements expressly permit. This case is no different.

7  **II.     PLAINTIFFS CANNOT EVADE THE PROTECTIONS OF SECTION 230**

8        Finally, even if Plaintiffs could state a claim, it would be defeated by Section 230. MTD

9  at 24-25. Plaintiffs make various arguments about Section 230, but all of them miss the mark.

10       **A.     Defendants Did Not "Contract Out Of" Section 230**

11       First, Plaintiffs make the perplexing argument that Defendants have somehow

12  "contracted out of" Section 230's protections. Opp. at 2, 12, 17. This argument seems to be that,

13  because a choice-of-law provision in YouTube's Terms of Service provides for application of

14  California law and does not expressly (and conspicuously) mention Section 230, Defendants

15  cannot now assert Section 230 as a defense. This is wholly unsupported and clearly wrong: A

16  standard choice-of-state-law clause does not bar claims or defenses under *federal* law. *See Mudd-*

17  *Lyman Sales & Serv. Corp. v. UPS,* 236 F. Supp. 2d 907, 910 (N.D. Ill. 2002) ("To the extent

18  that a contractual choice-of-law provision provides that the law of a specific state shall apply,

19  this includes federal law as well as state law."); *accord Volt Info. Sci., Inc. v. Bd. of Trs. of*

20  *Leland Stanford Junior Univ*., 489 U.S. 468, 488-90 (1989) (Brennan, J., dissenting) ("Choice-

21  of-law clauses simply have never been used for the purpose of dealing with the relationship

22  between state and federal law."). And that certainly is not what YouTube's Terms of Service

23  did—as Plaintiffs recognize by suing under federal law, and having had those federal claims

24  adjudicated (and rejected) on the merits. Having affirmatively invoked federal law as a basis for

25

26       [11] Plaintiffs' throwaway argument that they agreed to an unconscionable adhesion contract is
27  inconsistent with the many cases holding that YouTube's Terms of Service are not
    unconscionable. *See, e.g., Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 676 (9th Cir. 2018);
28  *accord Song fi, Inc. v. Google Inc*., 72 F. Supp. 3d 53, 62 (D.D.C. 2014).

1   their lawsuit, Plaintiffs cannot now turn around and claim that the parties' agreement somehow

2   waived federal law defenses.

3   **B.     Section 230(c)(1) Applies To Plaintiffs' Claims**

4   Plaintiffs do not discuss, much less distinguish, the ample body of cases holding that

5   Section 230(c)(1) protects content-moderation decisions just like those at issue here, whether

6   about monetization, Restricted Mode, or any of the other actions that YouTube supposedly took

7   in deciding how to display content on its platform. MTD at 20-23 & n.15.

8   Instead, Plaintiffs next make the sweeping claim that, "[a]s a matter of law, §230(c)(1)

9   does not apply to equitable or legal license or contract claims, claims for intentional

10  discrimination in contract or business transactions, unfair competition or false advertising, and

11  free speech claims." Opp. at 25. This is demonstrably false. Many courts—including the Ninth

12  Circuit and the California Court of Appeal—have expressly applied Section 230(c)(1) to bar

13  contract-based, discrimination, unfair-competition, false-advertising, and free-speech claims. *See*

14  *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 4-6 (Cal. Ct. App. 2021) (applying Section

15  230(c)(1) to UCL and contract-based claims, and citing numerous cases in which courts have

16  concluded that "such claims were barred because the plaintiff's cause of action sought to treat

17  the defendant as a publisher or speaker of user generated content"); *Lewis*, 461 F. Supp. 3d 938

18  (Section 230(c)(1) barred free speech, implied covenant, and false-advertising claims), *aff'd on*

19  *other grounds*, 851 F. App'x 723 (9th Cir. 2021); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,

20  144 F. Supp. 3d 1088, 1092-96 (N.D. Cal. 2015) (Section 230(c)(1) barred a federal

21  discrimination claim brought under the Civil Rights Act of 1964), *aff'd*, 697 F. App'x 526 (9th

22  Cir. 2017); *Domen*, 433 F. Supp. 3d at 596-97, 605 (Section 230(c)(1) barred free speech and

23  Unruh Act claims; explaining that "antidiscrimination laws . . . are not exempted from the reach

24  of the CDA"), *aff'd on other grounds*, 2021 U.S. App. LEXIS 28995 (2d Cir. Sept. 24, 2021).[12]

25

26  [12] *See also, e.g.*, *Wilson*, 2020 U.S. Dist. LEXIS 187851, at *13-14 (claim for discrimination
    under Title II of the Civil Rights Act); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp.

27  3d 1107, 1120-21 (N.D. Cal. 2020) (claims for discrimination under the Unruh Act and for
    breach of implied covenant); *King v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 151582, at *11

28  (N.D. Cal. Sept. 5, 2019), *aff'd*, 845 F. App'x 691, 692 (9th Cir. 2021) (UCL and implied

Indeed, Plaintiffs can make this claim only by badly misconstruing the cases on which they rely. For example, Plaintiffs suggest that the Ninth Circuit's decision in *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019), stands for the proposition that Section 230(c)(1) is "not applicable to use of identity rather than content." Opp. at 25-26. But *Enigma* did not address Section 230(c)(1) at all. And the language that Plaintiffs appear to reference—"the criteria for blocking online material must be based on the characteristics of the online material, *i.e.* its content, and not on the identity of the entity that produced it," *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 938 F.3d 1026, 1033 (9th Cir. 2019)—***was specifically withdrawn by the Ninth Circuit on rehearing***. 946 F.3d at 1040. Plaintiffs' reliance on withdrawn language is troubling—and certainly misplaced.

Plaintiffs' suggestion that Section 230(c)(1) does not apply "to enforcement of promises or contracts" (Opp. at 26) also distorts the limited judicial carve-out recognized in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105-09 (9th Cir. 2009). Opp. at 21-22. At most, this would apply only to Plaintiffs' implied-covenant claim, but as *Murphy* explained, the Ninth Circuit's decision in *Barnes* "never suggested . . . that *all* contract or promissory estoppel claims survive CDA immunity." *Murphy*, 60 Cal. App. 5th at 29. In *Murphy*, the court held Section 230(c)(1) applied to a contract claim that accused Twitter "of unfairly applying its general rules regarding what content it will publish"—not a "specific personal promise" as in *Barnes*. *Id.* at 29-30, 35. The Court of Appeal explained that "refusing to publish and banning Murphy's Tweets . . . 'reflect paradigmatic editorial decisions not to publish particular content.'" *Id*. at 29. The same is true here. *Accord Kifle v. YouTube, LLC*, 2021 U.S. Dist. LEXIS 193604, at *8-9 (N.D. Cal. Oct. 5, 2021) (Section 230 barred contract claim based in part on YouTube's removal of content).

### C.       The *Roommates* Exception Does Not Apply

Nor does *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008), help Plaintiffs. Opp. at 26. *Roommates* confirms that Section 230(c)(1) can apply to claims under anti-discrimination statutes (*id.* at 1173-75), but not insofar as the website "developed" the

---

covenant claims); *Brittain v. Twitter, Inc.*, 2019 U.S. Dist. LEXIS 97132, at *7 (N.D. Cal. June 10, 2019) (First Amendment and contract claims).

illegal content at issue—which it did by requiring users to provide information that violated the law (*id.* at 1164-67). This rule does not apply here.

Plaintiffs do not allege "material contribu[tion]" to user content; instead, they make the conclusory assertion that YouTube employs "a filtering and restricting system that embeds metadata and other discriminatory information into the video content which they then use to restrict and deny access." Opp. at 26. Neither the TAC, nor any other document before the Court, includes factual allegations that support the Opposition brief's assertion that "discriminatory information" is used to exclude videos from Restricted Mode or from YouTube's service. In any event, whatever the purported mechanism, "removing content is something publishers do," *Barnes*, 570 F.3d at 1103, and imposing liability on that basis treats YouTube as a publisher in violation of Section 230(c)(1), *Murphy*, 60 Cal. App. 5th at 25-26, 35.

Plaintiffs cannot escape that reality by invoking the specter of algorithms. In *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019), the Ninth Circuit held that Section 230(c)(1) applied to a website even though it used "features and functions, including algorithms, to analyze user posts . . . and recommended other user groups." *Id*. at 1098. Just as in *Dyroff*, "Plaintiffs . . . cannot plead around Section 230 immunity by framing these website features as content." *Id.* By reviewing third-party content to determine whether it can appear in Restricted Mode, be paired with advertising, or otherwise be displayed on its service, YouTube "was acting as a publisher of others' content." *Id.* That is true whether YouTube used its own tools to moderate that third-party content and whether those tools were manual or automated. *See Force v. Facebook, Inc.*, 934 F.3d 53, 67, 69-70 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) (rejecting argument that "Facebook's use of algorithms is outside the scope of publishing because the algorithms automate Facebook's editorial decision-making").

### D.    Section 230(c)(2)(B) Protects YouTube's Decisions About Restricted Mode

In trying to evade the separate immunity that Section 230(c)(2)(B) affords against claims based on Restricted Mode, *see* MTD at 23-24, Plaintiffs again rely on *Enigma*, which held that Section 230(c)(2)(B) did not immunize a provider of anti-malware software for allegedly blocking competing software. 946 F.3d at 1053-54. Plaintiffs' reliance is again misplaced. To

1    start, it is largely premised on the same withdrawn sentence from the panel's opinion discussed

2    above. Turning to what *Enigma* actually says—that a blocking decision allegedly driven by the

3    "anticompetitive animus" of one direct competitor to another is not "otherwise objectionable"

4    under Section 230(c)(2)—that narrow holding cannot plausibly be extended to Plaintiffs'

5    allegations here. As explained in Defendants' opening brief (MTD at 23-24), Defendants and

6    Plaintiffs are not direct competitors. Nor are Plaintiffs' claims based solely—or even

7    principally—on supposed anti-competitive animus. *See Asurvio Ltd. P'ship v. Malwarebytes*

8    *Inc.*, 2020 U.S. Dist. LEXIS 53906, at *10, *12-13 (N.D. Cal. Mar. 26, 2020) ("the limitation to

9    section 230(c)(2)(B) immunity recognized in *Enigma* does not apply" where the plaintiff "does

10   not allege, and cannot plausibly allege, that the parties are direct competitors").

11       Allowing Plaintiffs to evade Section 230(c)(2)(B) because they incant the word

12   "anticompetitive" would "render the statutory immunity meaningless." *Id*. Indeed, while

13   Restricted Mode is a paradigm of the tools protected by that provision, under Plaintiffs'

14   approach, the fact that YouTube creates some original content would effectively take Restricted

15   Mode outside the immunity because YouTube always could be said to be in competition with

16   other content creators. Section 230 cannot be "so casually eviscerated" by "threadbare" and

17   "implausible" allegations. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268-69 (9th Cir. 2016).[13]

18       **E.    Section 230 Is Not Unconstitutional**

19       Finally, Plaintiffs' constitutional attack on Section 230 fails.[14] Of course, if this Court

20   again resolves Defendants' motion without relying on Section 230, then the constitutionality of

21   the statute is not ripe for adjudication. Order at 18. But even if the Court reaches this issue,

22   Plaintiffs' claim is meritless. That is so for at least two distinct reasons.

23

---

24       [13] Plaintiffs' argument concerning "bad faith" (Opp. at 27) is equally misguided: there is no

25   "good faith" requirement in Section 230(c)(2)(B) or in Section 230(c)(1). *See, e.g.*, *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 (9th Cir. 2009).

26       [14] Defendants identified multiple, independent reasons that Plaintiffs' request for preemptive

27   declaratory relief that Section 230 is unconstitutional fails. MTD at 9-11. Plaintiffs do not respond to the standing or procedural issues Defendants raised, and appear to have abandoned

28   their standalone declaratory relief claim.

*First*, "a threshold requirement of any constitutional claim is the presence of state action," *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1186 (9th Cir. 1998), but there is none here. As this Court has already found, YouTube is not a state actor (Order at 9-12), and it does not become one merely by invoking a statutory immunity. The Ninth Circuit's decision in *Roberts* is directly on point. That case rejected a similar effort to hold the Federal Arbitration Act unconstitutional when it was invoked as a defense by a private litigant. *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 837-39 (9th Cir. 2017). The Court explained that "Plaintiffs cannot convert AT&T into a state actor simply by framing their FAA challenge as 'direct.' If every private right were transformed into a governmental action just by raising a direct constitutional challenge, the 'distinction between private and governmental action would be obliterated.'" *Id.* at 839; *accord Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982) (rejecting idea that "private parties could face constitutional litigation whenever they seek to rely on some [statute] governing their interactions with the community surrounding them").

Just as in *Roberts*, moreover, Plaintiffs' reliance on the Supreme Court's fractured decision in *Denver Area* does not help them. Plaintiffs claim that the case "set forth a three part test for evaluating the constitutionality of a permissive, private party speech law under the First Amendment" (Opp. at 27-28), but it did no such thing. The plurality expressly declined to "declare a rigid single standard, good for now and for all future media and purposes." *Denver Area Educ. Telecomm. Consortium, Inc. v. FCC*, 518 U.S. 727, 741-42 (1996). Recognizing that, the Ninth Circuit expressly held that the plurality opinion is "not binding" and that *Denver Area* should be read "very narrowly"—basically limited to its unusual facts involving the "unique characteristics of cable systems." *Roberts*, 877 F. 3d at 840-41. And, as this Court explained, there are critical differences between *Denver Area* and this case:

> Unlike the cable systems operators in *Denver Area*, YouTube is not a government-regulated entity charged with providing public broadcasting services. And unlike the statute at issue in *Denver Area*, which permitted cable system operators to ban specific content, Section 230 of the CDA does not single out particular types of speech as suitable for private censorship.

Order at 11-12. Plaintiffs have no meaningful response. In short, *Denver Area* does not remotely suggest that YouTube is transformed into a state actor simply by invoking Section 230. *See* United States's Memo. of Law in Support of Constitutionality of 47 U.S.C. § 230(c) (Dkt. No. 47).

*Second*, even putting aside the lack of state action, Section 230 does not violate the First Amendment. As this Court has explained, "nothing about Section 230 is coercive" (Order at 9-10), and the statute "does not prohibit any speech," *Lewis*, 851 F. App'x at 723-724 & n.2 (affirming dismissal of constitutional challenge to Section 230). *Accord Green v. Am. Online (AOL), Inc.*, 318 F.3d 465, 472 (3d Cir. 2003) (explaining that Section 230(c)(2) "does not require AOL to restrict speech; rather it allows AOL to establish standards of decency without risking liability for doing so"). "Section 230 reflects a deliberate *absence* of government involvement in regulating online speech." Order at 10. By providing statutory protection for the editorial choices of private online services—at once immunizing them from decisions to remove content **and** decisions to continue publishing content—Section 230 runs afoul of no First Amendment principle. To the contrary, the statute effectively codifies the First Amendment right of online services.

## CONCLUSION

Plaintiffs' TAC should be dismissed, this time with prejudice.

Dated:  October 15, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____ */s Brian M. Willen* _____
          Brian M. Willen

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC