UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIVINO GROUP LLC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, et al.,<br><br>    Defendants. | Case No. 19-cv-04749-VKD<br><br>**ORDER GRANTING MOTION TO DISMISS FOURTH AMENDED COMPLAINT; DENYING AS MOOT MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 121, 126 |

Defendants Google LLC ("Google") and YouTube LLC ("YouTube") move pursuant to Rule 12(b)(6) to dismiss plaintiffs' sole remaining claim for breach of the implied covenant of good faith and fair dealing. Dkt. No. 121. They also move pursuant to Rule 12(f) to strike certain portions of plaintiffs' fourth amended class action complaint. *Id*. Plaintiffs oppose those motions. Dkt. No. 125. Plaintiffs also separately move for leave to amend their pleading to, among other things, assert additional fact allegations.[1] Dkt. No. 126. Upon consideration of the moving and responding papers, as well as the oral arguments of counsel, the Court grants defendants' motion to dismiss without further leave to amend, denies as moot defendants' motion to strike, and denies plaintiffs' motion for leave to amend.[2]

---

[1] Plaintiffs state that the purpose of their motion to amend is to oppose what they perceive to be an attempt by defendants to challenge the Court's prior findings regarding plaintiffs' claims under the California Unruh Act and California unfair competition law. *See* Dkt. No. 126 at 2; Dkt. No. 131 at 1; Dkt. No. 136 at 63:4-22. Insofar as that is the basis of their motion to amend, the motion is denied as moot. As discussed at the motion hearing, the Court will not revisit its prior rulings in resolving the present motion to dismiss. As discussed below, although the Court grants plaintiffs' request to replace an incorrect copy of an exhibit to their complaint with a corrected one, the Court otherwise denies plaintiffs' motion to amend in all other respects.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 5, 16, 17.

## I. BACKGROUND

Plaintiffs Divino Group LLC, Chris Knight, Celso Dulay, Cameron Stiehl, BriaAndChrissy LLC d/b/a "BriaAndChrissy," Bria Kam, Chrissy Chambers, Chase Ross, Brett Somers, Lindsay Amer, Stephanie Frosch, Sal Cinquemani (also known as "SalBardo"), Tamara (Sheri) Johnson, and Greg Scarnici are Lesbian, Gay, Bisexual, Transgender, Transsexual or Queer ("LGBTQ+") content creators, viewers, users, and consumers who filed this putative class action against Google and YouTube. Plaintiffs claim that despite YouTube's purported viewpoint neutrality, defendants have discriminated against them based on their sexual or gender orientation, identity, and/or viewpoints by censoring, demonetizing, or otherwise interfering with certain videos that plaintiffs uploaded to YouTube. *See, e.g.*, Dkt. Nos. 1, 7, 20, 67.[3]

Plaintiffs filed their original complaint on August 13, 2019. Dkt. No. 1. They have amended their pleading several times since then. *See* Dkt. Nos. 7, 20, 67, 116. The Court granted two prior motions to dismiss plaintiffs' claims. *See* Dkt. Nos. 65, 107. In its most recent order granting defendants' motion to dismiss the third amended class action complaint, the Court dismissed, without leave to amend, plaintiffs' claim for a declaratory judgment, as well as their claims under the Lanham Act and the California Constitution. *See* Dkt. No. 107. While the Court found that plaintiffs pled plausible claims under the California Unruh Act and California's unfair competition law, those claims were dismissed without leave to amend, as barred by Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c). *Id*. The Court also dismissed plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, finding that plaintiffs' allegations did not clearly identify the applicable underlying agreement(s) or contract term(s). Plaintiffs were given leave to amend their implied covenant claim to "clearly identify which Terms of Service and 'other agreement(s)' and 'other contract(s)' form the basis for their claim." *Id*. at 23-24. The Court reserved judgment as to whether any such claim may be barred by CDA Section 230. *Id*. at 24 n.11.

Plaintiffs filed their operative fourth amended class action complaint, reasserting their sole

---

[3] The Court assumes the parties' familiarity with the general background facts and procedural history as described in its prior orders on defendants' motions to dismiss (Dkt. No. 65 at 2-6; Dkt. No. 107 at 1-4). Except as necessary, the Court does not repeat those matters in this order.

remaining claim for breach of the implied covenant of good faith and fair dealing.  *See* Dkt. No. 116.[4] Defendants move pursuant to Rule 12(f) to strike portions of that pleading, arguing that some of plaintiffs' allegations concern matters that have been dismissed, and are immaterial and inflammatory. Dkt. No. 121.  Defendants maintain that plaintiffs' implied covenant claim must be dismissed, in any event, pursuant to Rule 12(b)(6), on the grounds that their amended complaint still fails to allege sufficient facts supporting a plausible claim for relief.  They also argue that the claim is barred by a one-year contractual limitations provision, a contractual limitation of liability provision, and by CDA Section 230.  *Id.*

Focusing first on defendants' Rule 12(b)(6) motion to dismiss the implied covenant claim, for the reasons discussed below, the Court finds that plaintiffs have not asserted a plausible claim for relief and dismisses that claim without further leave to amend.

## II.    LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court is not required to "'assume the truth of legal conclusions merely because they

---

[4] In this order, the Court refers to plaintiffs' corrected fourth amended complaint (*see* Dkt. No. 116), as well as Exhibits 1-15 and 17-21 that are appended to the original version of that pleading (*see* Dkt. Nos. 114-1 through 114-21).  The Court grants plaintiffs' motion to amend to the extent that plaintiffs seek to refer to a corrected Exhibit 16 (Dkt. No. 126-1, Ex. B) that they say applies to the United States, and not the originally submitted version of that document that reportedly pertains to Australia.

3

are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

### III. DISCUSSION

#### A. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs assert, for themselves and on behalf of the YouTube Community Class,[5] a claim for breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 116 ¶¶ 135-268. "[E]very contract imposes upon each party a duty of good faith and fair dealing in the performance

---

[5] The YouTube Community Class is defined as follows:

> All persons or entities in the United States who entered into and/or are parties to the Form Agreements by accessing YouTube, including uploading, posting, or viewing video content on YouTube or related to the YouTube Platform on or after January 1, 2015 and continuing through to the present (the "Class Period") for whom Defendants consider, use or classify, based on personal data or other information related to a person's personal identity trait or characteristic protected under law, or commercial status or political viewpoint, to make decisions about access to content or services offered on YouTube under the Form Agreements.

Dkt. No. 116 ¶ 115. Excluded from the class are "Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not named in this Complaint, and the United States government." *Id.* ¶ 116.

4

of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002) (citing *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995)). The implied covenant of good faith and fair dealing "is based on general contract law and the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Waller*, 11 Cal. 4th at 36 (internal quotations and citations omitted). The covenant "is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Id*. (internal quotations and citation omitted). The elements required to establish a claim for breach of the implied covenant are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

"It is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal, Inc.*, 2 Cal. 4th 342, 373 (1992). "[T]he implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Id*. (internal quotations and citation omitted). "[A]s a general matter, implied terms should never be read to vary express terms." *Id*. at 374 (citation omitted). "And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Id*. (citation omitted).

As confirmed at oral argument, plaintiffs do not contend that there is an express contract provision requiring defendants to post plaintiffs' videos on YouTube. Nor do plaintiffs deny that defendants have broad discretion in deciding whether to remove, restrict, or demonetize content on YouTube. *See* Dkt. No. 136 (Mar. 21, 2023 Tr. at 26:20-27:4; 28:14-22; 38:1-9). Rather,

5

plaintiffs claim that defendants' various "Form Agreements, including the TOS [Terms of Service] Rules, Google's Privacy Policy, and related agreement(s)" require defendants to apply their rules and policies equally to everyone. *See, e.g.,* Dkt. No. 116 ¶¶ 96, 138. Plaintiffs claim that those agreements give rise to a promise that defendants will treat them "equally" and to an implied covenant that defendants will not treat plaintiffs' videos differently from those of other YouTube users based on plaintiffs' sexual or gender orientation, identity, and/or viewpoints. *See, e.g.*, Dkt. No. 116 ¶ 37; *see also* Dkt. No. 136 (Mar. 21, 2023 Tr. at 38:5-9).

According to plaintiffs, defendants have breached that implied covenant by removing, restricting, and/or demonetizing their videos based, not on a determination that the videos violated YouTube's rules, but rather, on the LGBTQ+ identity, viewpoints, or affiliations of the persons who posted or created that content. *See, e.g.,* Dkt. No. 116 ¶¶ 31, 55, 95-96, 104-106, 140-144; *see also* Dkt. No. 136 (Mar. 21, 2023 Tr. at 21:8-11, 14-19; 23:7-17). Defendants' alleged discriminatory conduct purportedly is carried out through human review of videos, as well as through "algorithms and automated filtering tools" that allegedly use information gleaned from plaintiffs' profiles and personal data to determine which users and videos may be "eligible for full audience reach, advertising, monetization, and other revenue based services." *See, e.g.,* Dkt. No. 116 ¶¶ 32-37, 121, 145-146. Defendants maintain that plaintiffs cannot state a viable claim for breach of the implied covenant of good faith and fair dealing because they have not, in the first instance, tethered their claim to any underlying contract.

To the extent plaintiffs claim that public-facing statements made on April 27, 2017, made during a September 2017 meeting between YouTube and certain users, or made during a Congressional hearing (*see, e.g.,* Dkt. No. 116 ¶¶ 46, 49, 100) are contractual in nature, plaintiffs fail to state a claim for relief. Defendants' various Terms of Service, appended as exhibits to plaintiffs' complaint, specify the policies and terms that are incorporated in the Terms of Service. Plaintiffs have not demonstrated that defendants' public-facing statements properly are part of those agreements, policies, or terms. Indeed, they seem to acknowledge that those public-facing statements are not independently actionable for purposes of their implied covenant claim. *See* Dkt. No. 116 ¶¶ 73-76 & Exs. 2-6; Dkt. No. 125 at 2, 12-13, 17; *see also Prager Univ. v. Google*

*LLC*, 85 Cal. App. 5th 1022, 1039 (2022) (rejecting argument that defendants' public-facing statements are contractual promises, where "the parties entered integrated contracts expressly providing that the written agreements, together with the materials incorporated by reference, constitute the 'entire agreement' concerning each relevant service."); *Newman v. Google LLC*, No. 3:20-cv-04011-VC, slip op. at 1 (Dkt. No. 138) (N.D. Cal. Nov. 28, 2022) (rejecting as "a nonstarter" plaintiffs' argument that YouTube statements at congressional hearings are actionable promises).

Similarly unpersuasive are plaintiffs' allegations that for the period prior to 2021, statements made in YouTube's Mission Statement—including those concerning "Freedom of Expression, "Freedom of Information," "Freedom of Opportunity," and "Freedom to Belong"— are contractual promises to treat everyone equally (*see, e.g.,* Dkt. No. 116 ¶¶ 96-97 & Ex. 18 (Dkt. No. 114-18 at 1143, 1144), Ex. 19 (Dkt. No. 114-19)). *See Newman*, No. 3:20-cv-04011-VC, slip op. at 1 (Dkt. 138) (N.D. Cal. Nov. 28, 2022) (rejecting argument that YouTube's Mission Statement constitutes an actionable promise); *see also generally Prager Univ. v. Google LLC*, 951 F.3d 991, 999-1000 (9th Cir. 2020) (concluding in the Lanham Act context that "[l]ofty but vague statements like 'everyone deserves to have a voice, and that the world is a better place when we listen, share and build community through our stories' or that YouTube believes that 'people should be able to speak freely, share opinions, foster open dialogue, and that creative freedom leads to new voices, formats and possibilities' are classic, non-actionable opinions or puffery.").

Plaintiffs' strongest basis for an alleged promise by defendants is the following sentence in the "Overview" section of YouTube's Community Guidelines:

> We enforce these Community Guidelines using a combination of human reviewers and machine learning, *and apply them to everyone equally—regardless of the subject or the creator's background, political viewpoint, position, or affiliation*.

Dkt. No. 114-8 at 249 (emphasis added); *see also* Dkt. No. 116 ¶ 96. Indeed, when pressed by the Court at oral argument to identify the contract and terms underlying their implied covenant claim, plaintiffs indicated that the essence of their claim is that in enforcing YouTube's Community Guidelines, defendants have promised to apply those Guidelines to everyone equally based on the

7

content of their videos, and not on the identities or viewpoints of the persons who created or posted the videos. *See* Dkt. No. 136 (Mar. 21, 2023 Tr. at 21:14-19); *see also, e.g.,* Dkt. No. 116 ¶¶ 104-105. Plaintiffs acknowledge that there is no express contractual provision that prohibits defendants from discriminating against plaintiffs based on their sexual or gender orientation or viewpoints. *See* Dkt. No. 136 (Mar. 21, 2023 Tr. at 21:8-11). They nonetheless maintain that YouTube's Community Guidelines, as a whole, are part of the various Terms of Service between plaintiffs and YouTube, and that the above-quoted provision, in particular, supports an implied covenant that defendants will only remove, restrict, or demonetize plaintiffs' videos based on the videos' content in the same manner they remove, restrict, or demonetize the videos of other YouTube users, and not based on the identities of the persons who created or posted that content.

Citing *Block v. eBay, Inc.*, 747 F.3d 1135 (9th Cir. 2014), defendants argue that the above-quoted language from the Community Guidelines is merely descriptive prefatory language that does not create a binding contractual obligation. In *Block*, the Ninth Circuit affirmed the district court's ruling that certain text in an eBay user agreement (i.e., "We are not involved in the actual transaction between buyers and sellers") contained no promissory language, and was instead "simply a general description of how eBay's auction system works." *Block*, 747 F.3d at 1138. In the present case, the context of plaintiffs' claim is that defendants allegedly apply their rules and policies based on a creator's background, viewpoints, position, or affiliation with the LGBTQ+ community. Unlike the statement in *Block*, the subject language from YouTube's Community Guidelines (i.e., that the Guidelines are "appl[ied]. . . to everyone equally—regardless of the subject or the creator's background, political viewpoint, position, or affiliation") is more than a mere description of how YouTube works. Rather, the statement reasonably may be construed as an affirmative representation about how defendants apply and enforce the Guidelines—namely, that the Guidelines will be applied without regard to a "creator's background, political viewpoint, position, or affiliation." *Block* does not compel a contrary conclusion. Although defendants maintain that the Community Guidelines are binding only on YouTube users, the particular text in question does not concern users' conduct, but rather, the manner in which *defendants* reportedly apply those Guidelines *to users*.

8

While neither side has presented sufficient argument or authority for this Court to decide, as a matter of law, precisely what documents constitute the contractual agreement(s) between the parties, defendants agree that the Community Guidelines (and other policies) are incorporated into YouTube's Terms of Service, which defendants do not appear to dispute are contractual agreements between YouTube and its users. *See* Dkt. No. 116 ¶¶ 67, 68, 73-76, 78.j., 96; Dkt. Nos. 114-2-114-6; Dkt. No. 136 (Tr. at 51:5-7). Thus, at a minimum, plaintiffs' complaint gives rise to a plausible inference that the subject language in the Community Guidelines may be read as constraining defendants' exercise of what defendants otherwise claim is their unfettered discretion to remove videos from YouTube.

Defendants nonetheless argue that the recent California appellate decision in the *Prager* litigation definitively establishes plaintiffs' inability to state an implied covenant claim. The Court disagrees. With respect to the Community Guidelines, *Prager* found that the Guidelines "in no way purport to bind defendants to publish any given video, or to remove a video only for violation of those guidelines." *See Prager Univ.*, 85 Cal. App. 5th at 1038. As discussed above, however, plaintiffs' implied covenant claim is not based on an alleged obligation by defendants to publish plaintiffs' videos. Moreover, it is not apparent that the specific Community Guidelines text that plaintiffs rely on in the present action was raised, addressed, or considered in *Prager*.

However, defendants persuasively argue that the cited Community Guidelines cannot plausibly be the basis for plaintiffs' implied covenant claim, asserting that the subject text about applying those rules to "everyone equally" was not added to the Community Guidelines until sometime in 2021, years after the moderation decisions alleged in plaintiffs' complaint.[6] Plaintiffs do not dispute that assertion; indeed, the complaint's allegations suggest that the cited Community Guidelines only attained their attributed significance in 2021. *See generally* Dkt. No. 116 ¶ 96

---

[6] For example, defendants point out that versions of the Guidelines previously downloaded by the parties demonstrate that a version of the Guidelines submitted to the Court in August 2021 does not appear to contain the subject text, whereas a version of the Guidelines submitted by plaintiffs in September 2021 does. *Compare* Dkt. No. 77-3 at 2 *with* Dkt. No. 82 at 43. For purposes of resolving defendants' present motion to dismiss, the Court takes judicial notice of the dates the parties submitted these versions of the Guidelines, as reflected in the Court's docket. Fed. R. Evid. 201.

(alleging that defendants must "apply [the Community Guidelines] to everyone equally," noting that "[u]ntil 2021," defendants' contracts were linked to YouTube's "Our Mission" and "Our Commitments" webpages). Plaintiffs do not argue or contend that the subject text in the Community Guidelines should or could be applied retroactively to their claim, which is based on allegations concerning events that predate the 2019 filing of their original complaint. Nor do they seriously dispute defendants' assertion that the Community Guidelines concern content that is not allowed on YouTube and pertain to circumstances in which YouTube may remove videos, but do not govern other challenged features of YouTube's service, i.e., Restricted Mode and monetization. *See generally* Dkt. No. 114-8. Accordingly, plaintiffs have not sufficiently or plausibly alleged the existence of agreement(s) or contract term(s) supporting their implied covenant claim. The claim therefore is dismissed.

### B. Motion for Leave to Amend Implied Covenant Claim

Plaintiffs contend that they can amend their allegations to state a viable implied covenant claim based on conduct that reportedly continued into 2021 and after. Specifically, they request leave to amend their complaint to (1) include a chart showing that as of January 2023, defendants "continue to restrict and demonetize" many of their videos that are identified in their current complaint, including certain videos "posted by [p]laintiff Divino (GNews) since September 2018"; (2) allege that "[d]efendants continue to limit and censor at least 8 promotional ads purchased by [p]laintiff Divino between January 26 and February 7, 2023"; (3) allege that "[a]t some time, on or before January 30, 2023," defendants removed a BriaandChrissy video ("10 worst Hugs") without notice, and the video has not been reinstated; (4) allege that one of Sal Cinquemani's videos ("Requited Trailer") was removed from the platform in July 2017, and later was reinstated, but currently "remains restricted and designated as 'unsuitable for advertising'"; and (5) include another chart purporting to show that for a number of the same videos identified in their current complaint that remain "restricted" as of January 2023, defendants did not restrict other purportedly similar videos posted on YouTube by other users. *See* Dkt. No. 126 at 4-19.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose

of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have not demonstrated that their proposed amendments will cure the identified deficiencies in their implied covenant claim. To begin, most of plaintiffs' proposed amendments concern alleged moderation decisions for videos that plaintiffs uploaded to YouTube between January 2013 and February 2020. *See* Dkt. No. 126 at 4-19. While the date these videos were first "restricted" is unclear, most of the identified videos (other than those listed for the Divino Group) were included in plaintiffs' original and first amended complaints filed in 2019 and thus appear to concern moderation decisions that predate those complaints. *See* Dkt. No. 1 ¶¶ 68, 157; Dkt. No. 7 at 56-60, 71-72; Dkt. No. 126 at 4-19. Even liberally construing plaintiffs' complaint as plausibly alleging that the cited text from the Community Guidelines Overview governs decisions about all challenged aspects of YouTube's service (i.e., removal, restriction, and monetization), none of these proposed amendments explains how plaintiffs plausibly could rely on an alleged promise made in 2021 in the Community Guidelines Overview that did not exist at the time of the moderation decisions underlying their claim. Plaintiffs presumably know when their videos were first "restricted," and yet they have not clearly identified any such videos as to which allegedly improper moderation decisions were made in 2021 or after.

Plaintiffs are not aided by their invocation of the doctrine of continuous accrual.[7] "Continuous accrual applies when there is a continuing or recurring obligation, such as monthly

---

[7] Plaintiffs argue for the application of the continuous accrual doctrine in response to certain contractual limitations periods, which defendants raise as a separate ground for dismissal of the implied covenant claim. The Court considers plaintiffs' arguments in the context of their proposed amendments, insofar as plaintiffs seem to suggest that the viability of their proposed amendments rests, at least in part, on the application of the continuous accrual doctrine.

11

billing and payments, with each month triggering a new limitations period." *Al-Ahmed v. Twitter, Inc.*, 603 F.Supp.3d 857, 878 (N.D. Cal. 2022) (citing *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013)). "Therefore, the theory of continuous accrual 'would permit [the plaintiff] to sue, but only for those discrete acts occurring within the [relevant limitations period] immediately preceding the filing of [the plaintiff's] suit.'" *Id*. (quoting *Aryeh*, 55 Cal. 4th at 1199-1200). Absent "separate wrongful acts to trigger the statute of limitations, continuous accrual does not apply." *Id.* (finding that "[t]he continued suspension of [plaintiff's] account" was a "distinct incident[]" that did "not constitute a separate act[.]") (internal quotations and citation omitted). Plaintiffs' implied covenant claim is based on discrete moderation decisions (i.e., to remove or otherwise restrict or demonetize plaintiffs' videos), many or all of which apparently were made prior to the alleged promise that first appeared in the Community Guidelines in 2021. Indeed, plaintiffs acknowledge that such decisions, e.g., "a decision to remove a video or delete an account might be characterized as a one-time breach[.]" Dkt. No. 131 at 7. Plaintiffs nonetheless maintain that they may proceed with an implied covenant claim based on what they contend are "recurring breaches" based on defendants' "failures" to "pay out contractually required monetization benefits" and to "fully distribute Plaintiffs' content[.]" *Id*. Those supposed "failures," however, are not the stated basis of plaintiffs' implied covenant claim. As discussed above, plaintiffs' implied covenant claim is based solely on an alleged promise by defendants to apply the Community Guidelines to "everyone equally," and an alleged implied obligation not to treat plaintiffs' videos differently based on plaintiffs' sexual or gender orientation, identity, and/or viewpoints.

More fundamentally, to the extent any of plaintiffs' proposed amendments might concern moderation decisions made in 2021 or after, plaintiffs have not sufficiently alleged that their videos have been treated differently or less favorably based on their LGBTQ+ identities or affiliation, than videos posted by users with non-LGBTQ+ identities or affiliations. For example, plaintiffs' proposed amendments include a chart that lists some of their videos that were restricted or demonetized, while allegedly similar videos posted by other YouTube users were not. *See* Dkt. No. 126 at 11-19. It is not self-evident from the face of the proposed amendments that the content

of plaintiffs' relevant videos and that of the comparator videos are, in fact, similar or even comparable, or that the only thing that distinguishes plaintiffs' videos from the comparators' videos is plaintiffs' LGBTQ+ identities or affiliation. But even broadly accepting that the identified videos are appropriate comparators, plaintiffs have not sufficiently alleged, for purposes of an implied covenant claim, that they have been treated *differently* from other YouTube users. Plaintiffs maintain that they have sufficiently alleged intentional discrimination, including disparate treatment, based on their LGBTQ+ identities, viewpoints, or affiliations—at least enough to survive a Rule 12(b)(6) dismissal with respect to their claim under the Unruh Act. *See* Dkt. No. 107 at 14-17. However, the allegations that may support plaintiffs' Unruh Act claim for intentional discrimination based on conduct that pre-dated the filing of the original complaint do not necessarily inform their claim for breach of the implied covenant of good faith and fair dealing based on the 2021 Community Guidelines. As discussed above, the alleged promise at issue is that in applying the Community Guidelines, defendants will treat "everyone *equally* regardless of the subject or the creator's background, political viewpoint, position, or affiliation." Dkt. No. 114-8 at 249 (emphasis added); Dkt. No. 116 ¶ 96. While plaintiffs' allege that their videos may have been removed, restricted, or demonetized based on their LGBTQ+ identities or affiliation rather than the videos' content since adoption of these guidelines, neither their existing allegations nor their proposed amendments plausibly indicate that other YouTube users have been treated any differently. *See, e.g., Newman*, No. 3:20-cv-04011-VC, Dkt. No. 138 at 2 (noting that "if swaths of users with varied characteristics experience similarly erroneous decisions with similar regularity, then the plaintiffs are not being treated differently" and finding that plaintiffs' complaint "may well allege that some of the plaintiffs' content has been removed or restricted when it should not have been according to YouTube's terms and rules. But they say nothing of whether similar videos posted by users with different characteristics have been treated any better."). While plaintiffs contend that defendants have, on a systemic level, treated them differently based on their LGBTQ+ status, they have identified only a handful of allegedly comparable videos that were not restricted. Plaintiffs' selection and juxtaposition of videos does not plausibly support a claim for systemic "unequal" treatment. For example, plaintiffs have

failed to allege facts plausibly suggesting that defendants, in fact, treat other users differently. Plaintiffs' proposed amendments do not address whether they have any factual basis to believe that videos posted by other users were not also erroneously or improperly removed or restricted, just as some of plaintiffs' videos allegedly were. Moreover, plaintiffs' existing and proposed amended allegations indicate that only a subset of their own videos have been restricted, while many others have been posted without restriction, undermining their assertion that unequal treatment occurs on a systemic level based on their LBGTQ+ identities or affiliations. *See, e.g.,* Dkt. No. 116 ¶¶ 11-18; Dkt. No. 126 at 4-19.

Plaintiffs have already amended their complaint at least four times. As explained above, the fourth amended complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing, and plaintiffs' proposed further amendments to that complaint would not cure the deficiencies in plaintiffs' pleading. Accordingly, the Court finds that this further amendment would be futile and therefore dismisses plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, without further leave to amend.[8]

## IV. CONCLUSION

Based on the foregoing, defendants' Rule 12(b)(6) motion to dismiss plaintiffs' sole remaining claim for breach of the implied covenant of good faith and fair dealing is granted. That claim is dismissed without further leave to amend. The Clerk of the Court shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: July 5, 2023

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[8] The Court finds it unnecessary to address defendants' other arguments and asserted grounds for dismissal. Their motion to strike certain allegations of the complaint is denied as moot.